Harry M. KECHIJIAN, Plaintiff,
Appellant,

v.

Joseph A. CALIFANO, Jr., etc., et al.,
Defendants, Appellees.

No. 79–1041.

United States Court of Appeals,
First Circuit.

Argued May 8, 1979.

Decided March 12, 1980.

**2**

Edward L. Gnys, Jr., Providence, R. I., with whom Robert W. Smith, and Gunning, LaFazia & Gnys, Inc., Providence, R. I., were on brief, and argument that existence for plaintiff, appellant.

Lawrence E. Burstein, Asst. Regional Atty., Dept. of Health, Ed., and Welfare, Boston, Mass., with whom Paul F. Murray, U. S. Atty., and Robert L. Gammell, Asst. U. S. Atty., Providence, R. I., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and MURRAY, Senior District Judge.*

MURRAY, FRANK J., Senior District Judge.

This is an appeal from the district court's denial of subject-matter jurisdiction in an action brought by plaintiff Harry M. Kechijian, a physician furnishing medical services to beneficiaries under Title XVIII[1] of the Social Security Act, Part B, 42 U.S.C. §§ 1395j–1395w, to recover reimbursements totaling $27,253.80 allegedly due him and unlawfully withheld by defendants. The defendants are the Secretary of Health, Education, and Welfare (Secretary) and Blue

Shield of Rhode Island (Blue Shield), the Medicare carrier under section 1395u(f)(1). Defendants admit withholding certain reimbursements as a setoff against overpayments which Blue Shield determined were made to plaintiff for furnishing medical services to beneficiaries under the Act. Defendants assert that the district court lacked subject-matter jurisdiction of the action because plaintiff failed to exhaust administrative remedies available to review the withholding decision. Because we conclude the district court ruled correctly that the presence of subject-matter jurisdiction was lacking, we affirm.

Blue Shield notified plaintiff in writing on April 10, 1972 there would be a temporary delay in processing his pending Medicare claims while they were being assessed for utilization and medical necessity. Blue Shield sought the advisory opinion of the State Peer Review Committee (Committee) of the Rhode Island Medical Society of the medical issues involved in plaintiff's Medicare claims, and referred certain cases to the Committee for its findings and recommendation. On May 25, 1972 plaintiff was requested to attend a meeting of the Committee, and to bring with him medical records of cases referred to the Committee by Blue Shield. Plaintiff appeared with his records at the informal meeting held May 30, 1972, and thereafter on June 8, 1972 he was advised in writing that evidence had been found of overutilization and misutilization by him of certain specified "medications questioned by the Medicare carrier". Plaintiff was notified of his right to appeal the determination, but no appeal was taken. On January 1, 1973 plaintiff decided to withdraw from participation in the Medicare program by declining to accept Medicare assignments from patients, effective March 3, 1973.

On January 8, 1974 plaintiff requested in writing payment of his 1972 reimbursement

* Of the District of Massachusetts, sitting by designation.

1. Pub.L. No. 89–97, §§ 101–22, 79 Stat. 286 (1965) (codified in 42 U.S.C. §§ 1395 et seq.),

commonly known as the "Medicare Act" (Act). References to the Medicare Act hereinafter will cite only the applicable section of Title 42 U.S. Code.

claims.[2] Receipt of the letter was acknowledged, and thereafter Blue Shield notified plaintiff settlement of his claims would be attempted. On April 30, 1974 Blue Shield formally notified plaintiff in writing that it had determined plaintiff was overpaid $26,199.85 by Medicare from January 1970 to December 1972, based on the Committee's findings of plaintiff's "overutilization and misutilization . . . in the frequent use of [certain] medications", and advised plaintiff he had a right to have the determination reviewed within six months. Plaintiff was requested to refund the $26,199.85, and was advised he could refund the amount by check, or could choose to have Blue Shield deduct the amount from the $27,253.80 withheld by Blue Shield, or could pay part by check and the balance by Blue Shield deduction. On June 11, 1974 plaintiff was notified by Blue Shield he could file a request for hearing of the determination that he had been overpaid certain of his Part B Medicare claims.

Without requesting a review or hearing, plaintiff brought this action on August 15, 1974, principally relying on federal question jurisdiction, 28 U.S.C. § 1331.[3] On October 4, 1974, Blue Shield forwarded to plaintiff a check for $1,559.35 which plaintiff did not cash and which represented the balance of his processed claims after deduction of the claimed overpayments of $26,199.85. On October 12, 1978, the district court dismissed the action for want of subject-matter jurisdiction, and the correctness of that ruling constitutes the issue on appeal.

In essence, plaintiff claims entitlement to the reimbursement payments (withheld by defendants) on the basis of accepting assignments from beneficiaries under section 1395u(b)(3)(B)(ii), and that defendants had no authority to withhold the reimbursements without notice, hearing and opportunity to plaintiff to present evidence and cross-examine witnesses. The action was brought to establish his claim to entitlement and the wrongful withholding, and for an order to require defendants to pay over the claims for reimbursements of which he had been deprived, as he alleges, without due process of law.

The Medicare statute is complicated, and provides for judicial review only in limited specific instances. It does not explicitly provide judicial review for determination of reimbursement disputes over a beneficiary's claim, or of a physician's claim as assignee, under Part B. *Cervoni v. Secretary of HEW*, 581 F.2d 1010, 1015 (1st Cir. 1978); *Szekely v. Florida Medical Ass'n*, 517 F.2d 345, 348 (5th Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). Judicial review would involve the courts in the complex and detailed task of "ascertaining the appropriate medical charges for technical services—based on facts which vary from community to community. . . . Determining the proper amount of these charges is a matter peculiarly suited to determination by a specialized agency". *St. Louis Univ. v. Blue Cross Hosp. Service*, 537 F.2d 283, 289 (8th Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). The Act and the regulations which the Secretary is authorized to prescribe provide a particular administrative scheme covering disputes arising from requests for payment of claims assigned to

---

**2.** In his letter plaintiff stated, *inter alia*, "As a result of my appearance and hearing at the Rhode Island Medical Society by the State Peer Review Committee, and the agreement of the Committee, I accepted the decision. I believe that I arrived at a workable basis with the Rhode Island Blue Cross [sic] which is the Medicare carrier".

**3.** In addition to federal question jurisdiction, the complaint alleges jurisdiction under 28 U.S.C. §§ 1651 (all writs act) and 2202 (declaratory judgments) in paragraph one. Neither party addressed the question of jurisdiction on these grounds, and in view of the disposition we make of the appeal we see no need to consider them. In paragraph 13 of the complaint it was alleged that the withholding of the payments violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06. Apparently recognizing that there is no grant of subject-matter jurisdiction under the APA, *see Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), neither party addressed that issue.

physicians.[4] Plaintiff's claim for reimbursements is not explicitly included in judicial review provisions of the Act. To vindicate his claim he has invoked jurisdiction under 28 U.S.C. § 1331. But federal question jurisdiction, 28 U.S.C. § 1331, over substantive Medicare reimbursement disputes is barred by section 205(h) of the Social Security Act, 42 U.S.C. § 405(h),[5] made applicable to the Medicare Act by 42 U.S.C. § 1395ii. *See Hospital San Jorge, Inc. v. Secretary of HEW*, 598 F.2d 684 (1st Cir. 1979); *Rhode Island Hospital v. Califano*, 585 F.2d 1153 (1st Cir. 1978); *Cervoni v. Secretary of HEW, supra.*

Plaintiff argues that because his challenge to the defendants' withholding of his claims presented a colorable constitutional due process issue, federal question jurisdiction was not barred by section 405(h) in the district court. In *Hospital San Jorge, Inc., supra*, we recognized that a "possible exception" to the jurisdictional bar of section 405(h) to federal question jurisdiction "might arise where a . . . reimbursement dispute presented a colorable constitu-

tional claim and the Act provided no available administrative process leading to judicial review".[6] *Id.* at 686. The district court found that plaintiff did not present a colorable constitutional claim. We find plaintiff's contention that his constitutional challenge is to "decisions not of administrative adjudication but of the nature of administrative procedure" adds nothing of substance to the claim alleged in the complaint. The due process claim posed by plaintiff is that an evidentiary administrative hearing, closely approximating a judicial trial, was required before Blue Shield could withhold his payments, and we agree with the district court that plaintiff has shown no colorable basis for such claim.

Although plaintiff did not receive payment of any claim for reimbursement after February 1972, he was made aware on or about April 10, 1972 that payment of his claims might be in dispute, and in June 1972 that payment might well be in jeopardy. We are informed by plaintiff's January 8, 1974 letter that he "accepted the decision"

---

4. The administrative process begins when the physician files an assignment of the claim. 42 C.F.R. § 405.251(b). An assignment is the transfer of the beneficiary's claim for payment to the physician "in return for [his] promise not to charge more . . . than the carrier finds to be the reasonable charges". 42 C.F.R. § 405.802(e). Determination of whether the charges are reasonable is made by the carrier, 42 C.F.R. §§ 405.501–.508, whose duty it is to institute methods of assuring that payments made under Part B "are for covered services which are medically necessary". 42 C.F.R. § 405.678(c). The carrier is required to establish procedures to provide opportunity for a fair hearing by the carrier to a beneficiary (patient) when requests for payment "are denied or are not acted upon with reasonable promptness or when the amount of such payment is in controversy". 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. § 405.678(g). A physician who has accepted an assignment of the claim from a patient covered under Part B has the same right to administrative review as the patient. 42 C.F.R. § 405.801(a). If the initial determination of his claim is adverse to the physician, he may seek administrative review of the determination, 42 C.F.R. §§ 405.807–.812, and beyond that he may request a hearing at which evidence may be presented, witnesses examined and arguments made. 42 C.F.R. §§ 405.-820–.835.

5. 42 U.S.C. § 405(h) reads:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under [section 1331 et seq.] of Title 28 to recover on any claim arising under [Title II of the Social Security Act].

6. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court found that the third sentence of section 405(h) "preclude[d] resort to federal-question jurisdiction for the adjudication of appellees' constitutional [challenges]". *Id.* at 761, 95 S.Ct. at 2465. However, the Court was there faced with claims for benefits where the Social Security Act *did* provide specific procedures, 42 U.S.C. § 405(g), for an administrative process culminating with judicial review. Totally barring judicial consideration of a constitutional claim raises troublesome constitutional problems. This circuit has not yet addressed that question. *Hospital San Jorge, Inc. v. Secretary of HEW*, 598 F.2d 684 (1st Cir. 1979).

of the State Peer Review Committee, but we are not told of the "workable basis with the Rhode Island Blue Cross [sic]" that he "believe[d] . . . [he] arrived at". When he made request for payment in writing in January 1974, he was notified that Blue Shield determined he had been overpaid by Medicare, for reasons stemming from the 1972 determination of the Committee, and that this determination was subject to administrative review and a hearing, at his request.

■ Plaintiff argues that the withholding of his claims for reimbursements deprived him of a constitutionally protected property interest without due process of law. His interest in the claims is that of assignee only of the beneficiary's claim under Part B of the Act, and he is not himself a beneficiary. Section 1395j. Even assuming plaintiff has a protected property interest, *but cf. Cervoni, supra* at 1018, he does not show that the withholding, if erroneous, results in irrevocable harm, or damage that could not be compensated by payment of the claims subsequently. This is not a case where "full relief cannot be obtained at a [post-termination] hearing". *Mathews v. Eldridge*, 424 U.S. 319, 331, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). No adequate reasons have been advanced that convince us that in these circumstances the administrative procedures are unfair or unreliable and that additional procedural safeguards are necessary. *See Mathews v. Eldridge, supra* at 343, 96 S.Ct. at 907; *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). Here, the prescribed administrative procedures provide for effective review after the initial withholding of reimbursement payments, and the right to an evidentiary hearing before the decision on overpayment becomes final. We do not see on this record a colorable question of due process deficiency raised against the existing procedures.

■ Plaintiff's argument that federal question jurisdiction exists to address the questions whether withholding of reimbursement is a proper administrative tool and whether a pretermination hearing must be afforded, which plaintiff contends "are questions peculiarly for the courts to resolve", will not rescue his case from the bar of section 405(h). *See Rhode Island Hospital v. Califano, supra* at 1158–59. Plaintiff has alleged procedural due process errors in the withholding of his reimbursement claims, not for the primary purpose of "obtaining a constitutionally adequate hearing", *St. Louis Univ. v. Blue Cross Hosp. Service, supra* at 292, but as a substantive attack upon the provisions of the Act which proscribe any payments that are not reasonable and necessary for medical services, *see* 42 U.S.C. § 1395y(a)(1); 42 C.F.R. § 405.-310(k), and the recoupment measures for payments improperly made. *See Szekely v. Florida Medical Ass'n, supra* at 348–50. Plaintiff's challenge to a denial of his claims for reimbursements under the Act and regulations falls precisely within the bar of section 405(h) to federal question jurisdiction, and his due process claim is not collateral to that challenge.

The plaintiff finally argues that his payments were "suspended" by defendants,[7] and that defendants failed to follow the procedures required by the Medicare Act and the regulations before payments can be legally suspended. Defendants admit they withheld payments in an amount equivalent to Medicare overpayments made to plaintiff, but they have not conceded that any payments due plaintiff were "suspended". Under the Social Security Amendments of 1972, the Secretary was authorized to terminate or suspend payments, under certain conditions,[8] to a person furnishing Medicare

---

7. In his brief plaintiff cites 42 U.S.C. § 1395u as the applicable section of the Act concerning suspensions, but there is naught in that section of the power of the Secretary to suspend. As appears in footnote 8, *infra*, the applicable section is 1395y(d).

8. Pub.L. No. 92–603, § 229(a), 86 Stat. 1329 (1972) (codified in 42 U.S.C. § 1395y(d)). The legislative history makes it clear that Congress intended to grant to the Secretary authority to terminate or suspend payments "under the medicare program for services rendered by any supplier of health and medical services found

Part B health and medical services to a beneficiary ". . . upon such reasonable notice to the public and to the person furnishing the services involved as may be specified in regulations . . .". Section 1395y(d)(2). The amendment authorizing suspension of payments became effective October 30, 1972, and the regulations [9] on May 27, 1972.

It is not disputed that Blue Shield's communications with plaintiff appearing in the record make no reference to any "suspension" of payments under section 1395y(d)(1), or the regulations or otherwise. There is nothing to show defendants expressed any "intention to suspend payments", 42 C.F.R. § 405.371(a), or made the required determination that "suspension of payments . . . is needed to protect the program against financial loss". 42 C.F.R. § 405.370(b). We do not believe that the withholding of plaintiff's payments after February 1972, standing alone, compels the inference that defendants "suspended" the payments under the Act. We think that the withholding of the payments, for the reasons given by Blue

Shield in the April 30, 1974 letter, is consistent with action by defendants taken to observe the statutory proscription against payments for services that are medically unnecessary. Section 1395y(a)(1).

■ Assuming, without agreeing, that such withholding of payments on the ground plaintiff had been overpaid Medicare claims was tantamount to "suspension" of the payments, it is clear none of the regulations, 42 C.F.R. §§ 405.370–.373, were followed by defendants, but it is also clear that plaintiff does not avoid the jurisdictional bar of section 405(h). Notice to plaintiff in Blue Shield's letter of April 30, 1974 of his right to administrative review of the overpayment determination within six months, and the notice of June 11, 1974 of his right to a hearing of that determination, afforded him ample opportunity to pursue remedies available under section 1395y(d)(3) [10] for review of the withholding determination. It is undisputed that plaintiff never sought to pursue the Act's administrative procedures or to obtain a decision of the Secretary after hearing. A determi-

to be guilty of program abuses". H.R.Rep. No. 231, 92d Cong., 1st Sess. 99, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4989, 5085.

**9.** The regulations in pertinent part follow:
42 C.F.R. § 405.370
   (a) Payments otherwise authorized to be made to . . . suppliers of services in accordance with . . . Subpart B of this Part 405 . . . may be suspended . . . by . . . a carrier when:
   (1) The . . . carrier has determined that the . . . supplier . . . has been overpaid under Title XVIII of the Social Security Act, or
   (2) The . . . carrier has reliable evidence . . . that such overpayment exists or that the payments to be made may not be correct.
   (b) A suspension shall be put into effect only after the provisions in §§ 405.371 and 405.372 have been complied with and the . . . carrier has determined that the suspension of payments, in whole or in part, is needed to protect the program against financial loss.
42 C.F.R. § 405.371
   (a) *General.* Whenever the . . . carrier has determined that a suspension of payments . . . should be put into effect . . . , the ·. . . carrier shall notify the . . . supplier of its intention to suspend payments, in whole or in part, and the reasons for making

such suspension. The . . . supplier will be given the opportunity to submit any statement . . . as to why the suspension shall not be put into effect . . . ..
42 C.F.R. § 405.372
   When . . . the . . . supplier submits a statement, the . . . carrier shall consider such statement (including any pertinent evidence submitted), together with any other material . . . , and make a determination as to whether the facts justify a suspension . . .. If the . . . carrier determines that a suspension should go into effect, written notice . . . will be sent to the . . . supplier. Such notice will contain . . . findings on the conditions upon which the suspension was based, and an explanatory statement for the final decision.

**10.** 42 U.S.C. § 1395y(d)(3) reads:
   Any person furnishing services described in paragraph (1) who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

nation of "suspension" is a serious and drastic measure, and section 1395y(d)(3) provides the only avenue for judicial review of such determination. But the failure of plaintiff to obtain a final decision of the Secretary on any claim of illegal or unconstitutional withholding or suspension of payments foreclosed that avenue, and left the district court without subject-matter jurisdiction. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Rhode Island Hospital v. Califano, supra; Association of American Medical Colleges v. Califano*, 186 U.S.App.D.C. 270, 569 F.2d 101 (D.C.Cir.1977).

■ Any remaining contention raised by plaintiff that the presence of federal question jurisdiction depends upon whether the disputed issues can be better resolved by the courts in a judicial proceeding than at an administrative hearing is without merit, for the validity of his claims for reimbursement is properly confided to the Agency. Our conclusion is that plaintiff has failed to demonstrate the presence of federal question jurisdiction in the district court under any of his contentions, and that the district court was lacking in subject-matter jurisdiction.

*Affirmed.*