761 F.2d 1304
 9 Soc.Sec.Rep.Ser. 373, Medicare&Medicaid Gu 34,670
Arvin J. KLEIN, M.D., and Alvarado Internal Medical Group,
Inc., Plaintiffs-Appellants,
v.
Margaret M. HECKLER,* Secretary of Health and
Human Services, Defendant-Appellee.
 No. 82-5174.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1982.
Decided May 17, 1985.
 
 Robert Hoad, San Diego, Cal., for plaintiffs-appellants.
 Jerry J. Bassett, Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before FLETCHER and NELSON, Circuit Judges, and EAST,** District judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Arvin Klein, a medical doctor, and the Alvarado Internal Medical Group, Inc., of which Klein is an officer, appeal the district court's dismissal of their action for judicial review of a decision of the Secretary of Health and Human Services. Appellants sought review of a determination that they owed the Government some $27,000 because they had fraudulently overstated claims to reimbursement for services rendered under Part B of the Medicare program. The district court granted the Secretary's motion to dismiss for failure to exhaust administrative remedies. We note jurisdiction under 28 U.S.C. Sec. 1291 (1982), and reverse.
 
 FACTS
 
 2
 Appellant Klein operates a diagnostic laboratory, the Alvarado Internal Medical Group, Inc. Klein and the laboratory perform services for individuals enrolled in Part B of the Medicare program.[1] 42 U.S.C. Secs. 1395j-1395x (1982). In the early 1970's, appellants qualified as medical providers under Part B and for several years submitted claims to various private insurance carriers for reimbursement for medical services provided to Klein's patients and to users of the laboratory services. Apparently, because Klein received payment for the bills submitted, the insurance carriers approved these bills as reasonable and the medical services as necessary. See 42 U.S.C. Sec. 1395u; United States v. Erika, 456 U.S. 201, 203, 102 S.Ct. 1650, 1652, 72 L.Ed.2d 12 (1982).
 
 
 3
 On July 14, 1976, the Secretary of Health and Human Services, acting through local Part B insurance carriers, initiated an investigation of appellants' Part B Medicare billings from 1972 through August 1976. On December 18, 1976, the Part B insurance carriers notified appellants that they had been instructed by the Secretary to withhold payments on future Part B claims until completion of the investigation. The carriers asserted that they were proceeding under the regulations which authorize them to suspend payments, 42 C.F.R. Secs. 405.370-. 373 (1982) (describing suspension procedure).[2] On December 17, 1976, the government secured a federal grand jury indictment against appellants, nine other doctors, and two other medical corporations for numerous violations of sections 287 (making false claims), 371 (conspiracy to defraud the Government), and 1001 (making false statements) of Title 18. See 18 U.S.C. Secs. 287, 371, 1001 (1982). These criminal charges stemmed from appellants' submission of allegedly fraudulent claims for reimbursement under Part B of the Medicare program. In September of 1977, following a jury trial, appellants were acquitted on all eleven of the charges against them. Despite this acquittal, in December, 1978, the Secretary demanded reimbursement from appellant Klein ($10,687.67) and from appellant Alvarado Clinic ($37,277.31) for "overpayments, damages, and costs" in connection with the investigation of appellants' billing practices between 1972 and 1976. The Secretary also threatened a lawsuit by the U.S. Attorney under the False Claims Act, 18 U.S.C. Sec. 231 (1982), to recover interest, double damages and penalties. Appellants resisted these collection efforts.
 
 
 4
 The Secretary continued the suspension of payments to appellants, instituted in December, 1976, for the next five years, even though appellants were acquitted on the fraud charges, continued to perform services for persons insured under Part B, and continued to submit claims to the carriers based on those services. Indeed, appellants allege that the Secretary notified their patients that appellants' claims were under investigation, and required appellants to continue to accept Medicare claims for payment for services.
 
 
 5
 As a result of the Secretary's conduct, substantial monies accumulated in appellants' suspended Medicare account. In March, 1981, the Secretary informed appellants that as a result of the investigation of their reimbursement claims, the insurance carriers and the Secretary had determined that appellants had filed false claims between 1972 and 1976 in the amount of $26,737.56. Consequently, in April, 1981, the Secretary ordered the $22,177.95 that had accumulated in appellants' suspended Medicare account transferred to the Federal Supplementary Insurance Trust Fund in partial satisfaction of the $26,737.56 debt owed to the Trust Fund on the allegedly fraudulent claims.
 
 
 6
 Appellants sought review of the Secretary's determination, with the insurance carriers, of the amount and existence of appellants' debt to the Trust Fund. The Secretary and the insurance carriers informed appellants that the only review available was by an employee of the carrier and that there was no provision for judicial review of that employee's final decision. See 42 U.S.C. Sec. 1395u(b)(3)(C); 42 C.F.R. Sec. 405.820 (1981); United States v. Erika, 456 U.S. at 202-03, 102 S.Ct. at 1651-52. Appellants argued that the decision that they had submitted false claims and owed substantial sums to the Part B Trust Fund was subject, under 42 U.S.C. Sec. 1395y(d)(3), to review by the Secretary in an administrative hearing.[3] Appellant sought judicial review of the Secretary's decision under the same section. 42 U.S.C. Sec. 1395y(d)(3). The Regional Director of the Medicare Program insisted that section 1395u governed and that a hearing before the insurance carrier was appellants' only remedy.
 
 
 7
 Appellants subsequently filed suit in district court pursuant to the provisions for judicial review set forth in 42 U.S.C. Sec. 1395y(d)(3). The Secretary moved for dismissal of the suit on the grounds that the district court had no jurisdiction and, even if it did, appellants had failed to exhaust their administrative remedies by refusing a hearing before the insurance carrier. The district court agreed that appellants had failed to exhaust their administrative remedies and dismissed the complaint. Appellants filed a timely notice of appeal.
 
 ISSUES
 
 8
 We must determine whether the investigation of appellants' Part B Medicare billings was instituted pursuant to the insurance carrier oversight provisions of 42 U.S.C. Sec. 1395u described in United States v. Erika, 456 U.S. at 202, 102 S.Ct. at 1651, or under the Secretary's power to investigate and correct fraud in the Medicare Program, 42 U.S.C. Sec. 1395y(d). If the former provision governs the investigation of appellants, they are not entitled to judicial review and the district court was without jurisdiction to entertain their suit. See Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 2018 n. 4, 80 L.Ed.2d 622 (1984) (dicta); United States v. Erika, 456 U.S. at 206-08, 102 S.Ct. 1653-54; Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). If the latter provision governs, appellants are entitled to an administrative hearing and judicial review under 42 U.S.C. Sec. 405(g) (1982) and we must then determine if appellants failed to exhaust their administrative remedies by declining the Secretary's offer of review by the insurance carrier.[4]
 
 
 9
 * Section 1395u
 
 
 10
 A. Purpose and Structure of Section 1395u.
 
 
 11
 Section 1395u allows the Secretary of Health and Human Services to contract with private insurance carriers for the administration of claims and payments under Part B of the Medicare program.[5] The principal purpose of the section is to allow the Secretary to take advantage of the experience and efficiency of the private insurance industry to process and pay claims under the Part B Medicare program. See Erika, 456 U.S. at 202, 102 S.Ct. at 1651.
 
 
 12
 Because of the limited nature of the private carrier's involvement in the Part B program, section 1395u provides only an abbreviated review of a carrier's processing and payment of claims.
 
 
 13
 If the carrier determines that a claim meets all Part B coverage criteria such as medical necessity and reasonable costs, the carrier pays the claim out of the federal funds.... If the carrier decides that reimbursement in full is not warranted, the statute and the regulations designate an appeal procedure available to dissatisfied claimants. All may request a "review determination," which is a de novo written review hearing before a carrier employee different from the one who initially decided the claim. Claimants who remain dissatisfied and whose appeal involves more than $100 then may petition for an oral hearing before a hearing officer designated by the carrier. See 42 U.S.C. Sec. 1395a(b)(e)(C); 42 C.F.R. Sec. 405.820 (1980). Unless the carrier or the hearing officer decides to reopen the proceeding, the hearing officer's decision is "final and binding upon all parties to the hearing...." 42 C.F.R. Sec. 405.835. Neither the statute nor the Secretary's regulations make further provision for review of hearing officer decisions.
 
 
 14
 Erika, 456 U.S. at 202-03, 102 S.Ct. at 1651-52 (citations and footnotes omitted) (emphasis added). These provisions for a hearing on overpayment claims before an employee of the Part B Medicare insurance carrier, set forth in 42 U.S.C. Sec. 1395u and 42 C.F.R. Secs. 405.801-.872, were intended to afford "a determination concerning the amount of benefits under Part B where claims will probably be for ... small[ ] amounts...." 456 U.S. at 208 n. 11, 102 S.Ct. at 1654 n. 11 (quoting S.Rep. No. 89-404, 89th Cong., 1st Sess., 54-55). Such carrier hearings were instituted to "avoid overloading the courts with quite minor matters." Id. at 209, 102 S.Ct. 1655. The premise of this limited review procedure, therefore, is that it will address frequent but minor complaints regarding individual bills, often for relatively small amounts.
 
 
 15
 B. Section 1395u Is Not Applicable To This Case.
 
 
 16
 In July, 1976, the Secretary of Health and Human Services ordered an investigation of appellants' billing practices; in December of that year, the Secretary instructed the Part B Medicare insurance carriers to suspend payments to appellant pursuant to 42 C.F.R. Secs. 405.370-.373. Appellant was given no opportunity to contest the suspension. The regulations provide for a unilateral suspension of payments only where there is "reliable evidence that the circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation." 42 C.F.R. Sec. 405.371(b). The fact that the investigation of appellants involved an effort to uncover Medicare fraud is confirmed by the indictment of appellants on fraud charges in late 1976. Thus the instant proceedings did not stem from a refusal by a carrier to reimburse appellants for specific services because the services were not medically necessary or reasonably priced. See United States v. Erika, 456 U.S. at 202-03, 102 S.Ct. at 1651-52 (discussing carrier hearing provisions where price of service is in dispute). Instead, payments to appellants for unchallenged claims were withheld because of questions about past claims now under challenge for which payments had already been made to appellants.[6] Under these circumstances, we cannot reasonably view the proceedings against appellants as a simple claim review like that described in United States v. Erika, authorized by the carrier review provisions of 42 U.S.C. Sec. 1395u and 42 C.F.R. Secs. 405.800-.872.
 
 
 17
 We find it significant to disposition of the instant case that section 1395u does not authorize carriers to investigate and correct abuse of the Medicare program or fraud in Part B billing practices (except to the extent that the fraud reveals itself in a claim for services that are not medically necessary or reasonably priced). Section 1395u contemplates the insurance carrier addressing each claim for reimbursement for services and either approving the claim and making the payment or rejecting the claim and refusing payment in whole or in part. See 42 C.F.R. Sec. 405.803 (determination of claims by carriers).
 
 
 18
 In the case at hand, it was not the carrier, but the Secretary, who determined that the bills should not be paid. The carrier was ordered by the Secretary to withhold the payments long after the carrier had already determined that each individual claim met the criteria for coverage under Part B. The carrier was ordered to transfer to the Trust Fund the funds the Secretary had ordered withheld from appellants. The Secretary's order was not made because of objections to current claims but because the Secretary sought recoupment for amounts already paid for earlier claims that she asserted were fraudulent. An agency within the Secretary's department, the Health Care Financing Administration, made the determination of fraud after appellant's acquittal in the criminal case.
 
 
 19
 The limited review procedures established by 42 U.S.C. Sec. 1395u(b)(3)(C), and approved in United States v. Erika, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), and Schweiker v. McClure, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), are intended to apply to carrier reimbursement determinations on a claim by claim basis, as each claim is presented. See Kechijian v. Califano, 621 F.2d 1, 5-6 & nn. 7 & 8 (1st Cir.1980). The procedures utilized by the Secretary in this case were not section 1395u procedures, nor can it be said that the Secretary's actions were of the type contemplated by Congress to be undertaken pursuant to section 1395u.
 
 II
 Section 1395y
 
 20
 A. The Purpose and Structure of Section 1395y.
 
 
 21
 Section 1395y(d), by contrast, grants the Secretary power to investigate and correct fraud and other abuses of the Medicare program. Subsection (d)(1) states:
 
 
 22
 No payment may be made under this subchapter with respect to any item or services furnished to an individual by a person where the Secretary determines under this subsection that such person--(A) has knowingly and wilfully made, or caused to be made, any false statement or representation of a material fact for use in an application for payment under this subchapter....
 
 
 23
 42 U.S.C. Sec. 1395y(d)(1). Subsection (d)(2) authorizes the Secretary to suspend payments to a service provider involved in such allegedly fraudulent transactions. Id. Sec. 1395y(d)(2). As the legislative history of section 1395y(d) indicates, the purpose and scope of the section was to provide the Secretary with power to investigate and correct fraud in the Medicare Program.[7] This grant of investigative power was further supplemented by a grant of authority to the Secretary to suspend payments to a service provider implicated in such abuse.[8] The Secretary's determinations of fraud or excess billing are explicitly subject to judicial review. 42 U.S.C. Sec. 1395y(d)(3).[9]
 
 
 24
 B. Section 1395y Is Applicable To This Case.
 
 
 25
 Several aspects of section 1395y(d) are important in determining the nature of the proceeding against appellant in this case. First, section 1395y(d) is the source of the Secretary's authority to police abuses in all parts of the Medicare program, including Part B. It is also the only source of statutory authority for suspending payments of future claims to approved Medicare service providers. Finally, section 1395y(d) contemplates action by the Secretary on a larger scale than rejection of individual claims submitted by service providers on a claim by claim basis.
 
 
 26
 The abuses that Congress intended to correct by enacting section 1395y(d) and the procedures for correcting these abuses describe quite precisely the very type of allegations of wrongdoing and action undertaken by the Secretary with respect to appellants. Only section 1395y(d) of Title 42 authorizes the kind of fraud investigation and suspension of payments initiated by the Secretary here. The procedures utilized by the Secretary are unlike anything authorized by the carrier provisions of section 1395u and its implementing regulations.[10] We presume regularity on the part of the Secretary and accordingly conclude that the proceedings against appellants were authorized by and conducted pursuant to 42 U.S.C. Sec. 1395y(d).[11]
 
 
 27
 C. Judicial Review Is Available Under 42 U.S.C. Sec. 405(g).
 
 
 28
 Section 1395y(d)(3) provides that any person who is dissatisfied with the Secretary's determination under this section is entitled to notice and a hearing from the Secretary and to judicial review of the Secretary's post-hearing decision under 42 U.S.C. Sec. 405(g).[12] In this case the Secretary made a determination that appellants had made false statements and had overbilled, a determination within her authority under section 1395y(d)(1)(A) & (B). Therefore, appellants are entitled to notice and hearing under section 1395y(a), (d).[13]
 
 
 29
 The Secretary's mistaken view that she can proceed under 42 C.F.R. Sec. 405.370-. 373 and thereby avoid judicial review cannot change this result. To be sure, those regulations appear to implement section 1395u and, thus, proceedings under them would not normally be subject to judicial review.[14] The regulations are for reviews of carriers and contemplate procedures entirely different from those followed by the Secretary in this case. Moreover, unilateral supervision of payments under 42 C.F.R. Sec. 405.371(b) requires evidence of fraud or willful misrepresentation. Id. Since appellants were acquitted of fraud charges brought by the Secretary in criminal proceedings, this regulation provides scant support for the continued suspension of payments. See id. Moreover, as shown above, the suspensions here were not initiated by the carriers but by the Secretary. The Secretary treats the case as involving recoupment of payments for multiple fraudulent claims. The Secretary's determinations of fraud, however, are expressly made subject to judicial review by section 1395y(d). Fraud, civil or criminal, is a serious charge. The Secretary cannot avoid judicial review by simply asserting that she is proceeding under a section that does not provide for judicial review. Such an interpretation would make section 1395y superfluous. Congress quite properly intended that persons accused of fraud have access to judicial review.
 
 
 30
 The district court therefore had subject matter jurisdiction to hear appellants' complaint. See Kechijian v. Califano, 621 F.2d 1, 6 (1st Cir.1980); Eisenberg v. Mathews, 420 F.Supp. 1274 (E.D.Pa.1979).
 
 III
 Exhaustion of Administrative Remedies
 
 31
 The district court dismissed appellants' suit for failure to exhaust administrative remedies. Section 1395y(d)(3), through section 405(g), imposes a statutory requirement that a claimant exhaust administrative remedies before seeking judicial review, see 42 U.S.C. Sec. 1395y(d)(3); Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); Weinberger v. Salfi, 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975). Section 1395y(d)(3) also provides for an administrative hearing by the Secretary to result in a "final decision" which is then subject to judicial review. Id.
 
 
 32
 In this case, however, the Regional Director of the Medicare Program informed appellants unequivocally that they were not entitled to review of their claim by the Secretary. The carrier review procedure offered appellants was not equivalent to the administrative review envisioned by section 405(b), made applicable through section 1395y(d)(3). Under these circumstances, we find the language of the Supreme Court in Weinberger v. Salfi applicable:
 
 
 33
 Once a [claimant] has presented his or her claim at a sufficiently high level of review to satisfy the Secretary's administrative needs, further exhaustion would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest.
 
 
 34
 422 U.S. at 765-66, 95 S.Ct. at 2466-67. See also Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (Secretary waived exhaustion requirement by stipulating that claims could be denied on their merits); Lopez v. Heckler, 725 F.2d 1489, 1500-03 (9th Cir.1984) (exhaustion futile when Secretary refuses to follow the law). The Secretary cannot complain of failure to exhaust administrative remedies when she refuses to provide the appropriate ones. See Lopez, 725 F.2d at 1503. Accordingly, we find that appellants exhausted their administrative remedies before they filed suit in district court. We hold that the Secretary's decision that appellants had submitted false claims and owed some $27,000 to the Part B Trust Fund was a determination of fraud within section 1395y(d)(3).
 
 CONCLUSION
 
 35
 Appellants are entitled to the review procedures outlined in 42 U.S.C. Sec. 1395y(d)(3). We reverse the district court's dismissal of appellants' action and remand to the district court with direction to return the case to the Secretary for a hearing in compliance with section 1395y(d)(3). If appellants remain dissatisfied after the Secretary issues a final decision, appellants may seek judicial review of the merits of that decision under section 1395y(d)(3).
 
 
 36
 We deny the petition for rehearing. The opinion filed December 20, 1983 is withdrawn and this opinion substituted in its stead. No further petitions for rehearing will be entertained. REVERSED and REMANDED.
 
 
 
 *
 Substitution of parties pursuant to Fed.R.App.P. 43(c)(1)
 
 
 **
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 The Supreme Court recently described the procedures for administering services and paying claims under the Part B program:
 Part B of the Medicare program ... is a federally subsidized, voluntary health insurance system for persons who are 65 or older or who are disabled. The companion Part A Medicare program covers institutional health costs such as hospital expenses. Part B supplements Part A's coverage by insuring against a portion of some medical expenses, such as certain physician services and X-rays, that are excluded from the Part A program. Eligible individuals pay monthly premiums if they choose to enroll in part B. These premiums, together with contributions from the federal government, are deposited in the Federal Supplementary Insurance Trust Fund that finances the Part B program.
 * * *
 The Secretary of Health and Human Services administers the Medicare program. "In order to provide for the administration of the benefits ... with maximum efficiency and convenience for individuals entitled to benefits," the Secretary is authorized to assign the task of paying Part B claims from the Trust Fund to private insurance carriers experienced in such matters.... After Part B enrollees receive medical care, they (or, after their assignment, their medical providers) bill the private insurance carrier.
 United States v. Erika, 456 U.S. 201, 202-03, 102 S.Ct. 1650, 1651-52, 72 L.Ed.2d 12 (1982).
 
 
 [2]
 The regulations in pertinent part follow:
 
 
 [42]
 C.F.R. Sec. 405.370
 (a) Payments otherwise authorized to be made to ... suppliers of services in accordance with ... Subpart B of this Part 405 ... may be suspended ... by ... a carrier when:
 (1) The ... carrier has determined that the ... supplier ... has been overpaid under Title XVIII of the Social Security Act, or
 (2) The ... carrier has reliable evidence ... that such overpayment exists or that the payments to be made may not be correct,
 (b) A suspension shall be put into effect only after the provisions in Secs. 405.371 and 405.372 have been complied with and the ... carrier has determined that the suspension of payments, in whole or in part, is needed to protect the program against financial loss.
 
 
 [42]
 C.F.R. Sec. 405.371
 (a) General. Whenever the ... carrier has determined that a suspension of payments ... should be put into effect ..., the ... carrier shall notify the ... supplier of its intention to suspend payments, in whole or in part, and the reason for making such suspension. The ... supplier will be given the opportunity to submit any statement ... as to why the suspension shall not be put into effect.
 ....
 
 
 [42]
 C.F.R. Sec. 405.372
 When ... the ... supplier submits a statement, the ... carrier shall consider such statement (including any pertinent evidence submitted), together with any other material ..., and make a determination as to whether the facts justify a suspension ..... If the ... carrier determines that a suspension should go into effect, written notice ... will be sent to the ... supplier. Such notice will contain ... findings on the conditions upon which the suspension was based, and an explanatory statement for the final decision.
 
 
 [3]
 The administrative hearing is provided by section 1395y(d)(3), which states that the hearing should be provided "to the same extent as is provided in section 405(b) of this title." Id. Section 405(b) makes an administrative hearing by the Secretary available to any individual whose request for payment is determined unfavorably. 42 U.S.C. Sec. 405(b)
 
 
 [4]
 The Secretary also argues, for the first time in her petition for rehearing, that she was also acting pursuant to 42 U.S.C. Sec. 1395gg (1982). This section does provide authority for withholding benefits for overpayments, but only payments under subchapter II (old-age, Survivors and Disability Insurance Benefits) may be withheld. This section does not provide authority for reducing payments under subchapter XVIII for Medicare
 
 
 [5]
 As the legislative history of section 1395u notes:
 The committee believes that medical benefits under the supplementary program in Part B should be administered by the private sector. Private insurers ... have great experience in reimbursing physicians.
 * * *
 The House-passed bill requires the Secretary, to the extent possible, to enter into contracts with carriers under which the carriers would perform specific administrative functions .... These functions include: Determining the amount of payment due providers and other persons, and making the payments; auditing records of providers; ... serving as a channel of communication of information relating to the programs administration; and otherwise assisting in the administration of the supplementary plan.
 S.Rep.No. 89-404, 89th Cong., 1st Sess., reprinted in 1965 U.S.Code Cong. & Ad.News 1943, 1993-94.
 
 
 [6]
 The Secretary argues that she was not reducing future payments, but rather merely applying those future payments to reduce the overpayment. The fact remains, however, that the Secretary took money to which appellants were clearly entitled for current approved claims to satisfy the Secretary's ex parte conclusion of overpayment of earlier claims that she contends were fraudulent
 In a normal recoupment, the Secretary would bring suit in federal court to recover the money allegedly overpaid. We have recognized jurisdiction over such cases. See United States v. California Care Corp., 709 F.2d 1241, 1245-47 (9th Cir.1983). The Secretary chose to bypass this judicial avenue by ordering a third party, the carrier, to transfer an amount equivalent to the allegedly overpaid funds to satisfy the debt. This avenue was only possible because the Secretary required appellant to remain in the program and withheld payment on the claims until the amounts accumulated to a level that would satisfy the alleged overpayment. Normally the one fallback for a citizen subjected to extra-judicial executive action is that the action can be enforced only through the judicial process. See generally Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362 (1953). The methods employed by the Secretary in this case have allowed her to avoid some form of judicial review before taking the funds.
 
 
 [7]
 The House Reports states:
 Section 229(a) of the bill [codified as 42 U.S.C. Sec. 1395y(d) ] amends section 1862 of the Social Security Act (as otherwise amended by the bill) by adding a new subsection (d) which provides that no payment may be made under either part A or part B of title XVIII for items or services furnished by a person whom the Secretary determines (1) has made or caused to be made false statements or misrepresentations of fact for use in applying for payment or determining the right to a payment under the medicare program; (2) has submitted or caused to be submitted bills or requests for payment containing charges (or costs) which the Secretary, with the concurrence of the program review team (discussed below), finds to be substantially in excess of such person's customary charges (or costs) unless there is good cause for such charges (or costs); or (3) has furnished services or supplies which the Secretary, with the concurrence of the physicians or other professional health personnel of the program review team, determines are substantially in excess of the needs of or are harmful to individuals, or are of grossly inferior quality. The determinations of the Secretary pursuant to these provisions are to be effective after there has been given such reasonable notice to the public and the person involved as may be specified in regulations.
 H.R.Rep.No. 231, 92d Cong., 2d Sess. reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5301 (emphasis added).
 
 
 [8]
 The legislative history of section 1395y(d) notes this new grant of authority specifically:
 Present law does not provide authority for the Secretary to withhold future payments for services furnished by an institutional provider of services, a physician, or any other supplier who either abuses the program or endangers the health of beneficiaries, although payment for past or current claims may be withheld on an individual basis where the services are not reasonable or necessary for treatment of illness or injury or where the supplier fails to provide the necessary payment information.
 Your committee believes it important to protect the medicare, medicaid, and maternal and child health programs and their beneficiaries from those suppliers of services who have made a practice of furnishing inferior or harmful supplies or services, engaging in fraudulent activities, or consistently overcharging for their services. Such protection is not now provided under the law. For example, if a physician is found guilty of fraud in connection with the furnishing of services to a medicare beneficiary, there is no authority under present law to bar payment on his subsequent claims so long as the physician remains legally authorized to practice. States can, and some do, bar from medicaid providers who abuse the program, but they are not now required to do so.
 Under your committee's bill, the Secretary would be given authority to terminate or suspend payments under the medicare program for services rendered by any supplier of health and medical services found to be guilty of program abuses.
 Id. at 5085.
 
 
 [9]
 The Secretary argues that the legislative history of section 1395y(d) recognizes that the authority to withhold payments is not subject to judicial review based on a portion of the Committee report quoted supra note 8. That portion of the report states,
 It is not intended that this provision would in any way change the Secretary's present right to withhold payment where necessary payment information is not provided. Nor would the supplier of services be entitled to a hearing or judicial review with respect to payments withheld under such existing authority.
 Id. at 1086. We find this language inapplicable to this case; the Secretary's actions in this case are not the withholding of payments because the necessary payment information was not provided, for the carrier made the determination that adequate information existed and paid the claims.
 
 
 [10]
 We note that the regulations adopted by the Secretary to implement section 1395y(d) speak of determinations of fraud by the Health Care Financing Administration (HCFA), as was done in this case. See 42 C.F.R. Sec. 420.100-.120 (1983). By contrast, sections 405.370-.373, adopted (apparently) to implement section 1395u, but see Kechijian v. Califano, 621 F.2d 1 (1st Cir.1980) (discussed in note 11, infra ), speak of determinations by the carrier. See supra note 2
 
 
 [11]
 The First Circuit considered a similar issue in Kechijian v. Califano, 621 F.2d 1 (1st Cir.1980). In Kechijian the carrier made a determination of overpayment because of the doctor's alleged overutilization of certain medications; no allegations of fraud were made. Acting pursuant to 42 C.F.R. Sec. 405.370-.373, the carrier suspended payments and stated it intended to withhold payments to compensate for the overcharge. The court found judicial review available under section 1395y(d)(3)
 We disagree with the First Circuit to the extent that it found that the regulations served to implement section 1395y(d)(3), for as the Secretary points out in her petition for rehearing, these regulations were adopted before the enactment of section 1395y. We express no view, however, as to whether section 1395y(d)(3) subjects an action properly taken under 42 C.F.R. Sec. 405.370-.373 to review to the extent that the action falls within the terms of section 1395y(d)(1) or to the extent that the Constitution may require. See infra note 13.
 
 
 [12]
 Section 1395y(d)(3) provides:
 Any person furnishing services described in paragraph (1) who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to a reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.
 42 U.S.C. Sec. 1395y(d)(3) (1982).
 Section 405(g) provides in relevant part,
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or such further time as the Secretary may allow.
 42 U.S.C. Sec. 405(g) (1982).
 
 
 [13]
 Technically, section 1395y(d) secures for appellants judicial review of only the Secretary's determination of fraud or overbilling. Section 1395y(d) does not appear to provide for review of the action taken in offsetting the money withheld against the money owed. Since review of the former will secure review of the latter, we need not consider whether such a preclusion of review would be unconstitutional, see Erika, 456 U.S. at 211 n. 14, 102 S.Ct. at 1655 n. 14, nor whether mandamus jurisdiction would exist over the latter issue, see Drennan v. Harris, 606 F.2d 846, 850 n. 1 (9th Cir.1979)
 
 
 [14]
 The Secretary argues, for the first time in her petition for rehearing, that her actions in this case were an exercise of the common law right of recoupment. See Drennan v. Harris, 606 F.2d 846, 849 (9th Cir.1977); Szekely v. Florida Medical Association, 517 F.2d 345 (5th Cir.1975)
 Drennan was in many respects similar to the case at hand: a physician sought judicial review of a determination to recoup overpayments. The determination of overpayment in Drennan, however, was made by the carrier and not by the Secretary. Thus, the proceedings appeared to be under section 1395u and not 1395y(d).
 Furthermore, although we dismissed the complaint in Drennan for lack of jurisdiction, we ordered the district court to transfer the case to the Court of Claims. We were unaware at the time, however, that the Court of Claims would subsequently dismiss for lack of jurisdiction. See Drennan v. United States, No. 88-80 C (Ct.Cl. August 27, 1982). We recognized that our refusal to entertain Drennan's constitutional claims would likely be unconstitutional if no court had jurisdiction to hear them. See 606 F.2d at 85; see also Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (access to courts essential to decision of constitutional questions); United States v. California Care Corp., 709 F.2d 1241, 1247 (9th Cir.1983) (to deny jurisdiction over action to reimburse overpayments "would create substantial due process problems"); Association of Home Health Agencies v. Schweiker, 690 F.2d 932, 939 & n. 6 (D.C.Cir.1982) ("Every court that has considered the issue agreed that section 405(h) should be read so as to permit some avenue of constitutional claims" (emphasis in original) (and cases cited therein)). Thus, we denied jurisdiction in Drennan only because we thought the Claims Court would have jurisdiction. For this reason, Drennan is of doubtful validity today. See generally, Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362 (1953).