978 F.2d 520
 Medicare & Medicaid Guide P 40,868
Arvin J. KLEIN, M.D., and Alvarado Internal Medical Group,
Inc., Plaintiffs-Appellants,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 91-55392.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 21, 1992.
Decided Oct. 27, 1992.
 
 Robert Hoad, San Diego, Cal., for plaintiffs-appellants.
 Jerry J. Bassett, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., John R. Neece, Asst. U.S. Atty., San Diego, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: NORRIS, REINHARDT, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 This case makes our "rule of law" method of resolving disputes look more like a degenerative disease than a rational process. The facts and circumstances behind the current appeal are found in Klein v. Heckler, 761 F.2d 1304 (9th Cir.1985) ("Klein I"). This second appeal is a disappointing sequel to an unresolved Klein I.
 
 
 2
 By way of background, this controversy over reimbursement for services allegedly rendered under Part B of the Medicare program[1] (1) began with medical services and billing events that occurred twenty years ago in the early 1970's; (2) resulted in an indictment of the appellants fifteen years ago in 1977 for conspiring to submit false claims--they were acquitted; (3) surfaced civilly eleven years ago with a complaint filed by appellants in the district court in 1981 in which they sought to recover the money they had been acquitted of allegedly trying to steal; (4) came to us on appeal in 1985 from a ruling they had not exhausted administrative remedies; (5) was remanded seven years ago for an administrative hearing only to disappear for four years into a federal bureaucracy that failed to comply with the court's order to schedule a hearing; and (6) comes to us again on appeal from a district court ruling that in dealing with the unresponsive bureaucracy that forgot about their hearing, appellants still have failed to exhaust their administrative remedies. This history lends new meaning to the word "exhaustion."
 
 
 3
 The news, good or bad depending on where you sit, is that the end is not in sight. We reverse the district court and remand for further proceedings consistent with this opinion. In an attempt to accelerate the process and to provide some continuity to this adventure in litigation, this panel will retain jurisdiction over any future appellate activity.
 
 
 4
 * In Klein I, this court on May 17, 1985, reversed an order of the district court dismissing appellant's action for failure to exhaust administrative remedies. We remanded the matter with instructions to the district court "to return the case to the Secretary for a hearing in compliance with section 1395y(d)(3)." Id. at 1313. In so doing, we indicated that "[i]f appellants remain dissatisfied after the Secretary issues a final decision, appellants may seek judicial review of the merits of that decision under section 1395y(d)(3)." Id. at 1313. The purpose of this hearing was to resolve appellants' claim to reimbursement of $26,737.56.
 
 
 5
 On July 12, 1985, the district court followed our instructions to the letter and formally remanded this matter to the Secretary whose unmistakable responsibility it was to arrange for and schedule an administrative hearing. Because of what can only be described as unjustifiable inattention on the part of the Department of Health and Human Services ("Department") to this order, four years passed without the Department doing anything to comply with it. Parenthetically, the Department now explains its failure with the statement that "somehow the matter got lost or overlooked." The Department "does not deny" responsibility for its failure, which is an artful way of admitting it made a mistake.
 
 
 6
 Although responsibility for setting up the ordered hearing was clearly with the Department, we are confounded by the failure of counsel for the appellants vigorously to press the Department for his clients' rights during this four-year lapse. He claims "phone calls" and "a letter" to the Department of which the Department has no record.[2] In any event, not having been accorded the spoils of their hard-fought appellate victory, the appellants awoke from their not adequately explained hibernation on July 21, 1989. They sought leave of the district court to file a supplemental complaint outlining the failure of the Department to provide them with the hearing they fought to win four years earlier. Leave to do so was granted, and a supplemental complaint was filed--three years ago, on August 31, 1989.
 
 
 7
 Prodded by the supplemental complaint, the Department arose from its slumber in the fall of 1989, and, in the words of Assistant United States Attorney John R. Neece, "informed Mr. Hoad [appellants' counsel] by telephone that the agency was agreeable to furnishing Mr. Klein a hearing." Declaration of John R. Neece dated June 6, 1990 (emphasis added). Why the Department believed it had to be agreeable to the hearing is unclear, but it says it was prepared to move on an expedited basis.
 
 
 8
 The sensible idea of settlement was then introduced into the process, but predictably a dispute arose over Mr. Hoad's demand for interest on any money owed to his clients. Mr. Neece countered by informing Mr. Hoad to file a customary "written demand."
 
 
 9
 Mr. Hoad filed nothing. Mr. Neece then wrote him a letter on February 1, 1990, repeating the government's "willingness" to hold a hearing or to receive a written demand in connection with a possible settlement. Mr. Neece had apparently obtained authority to settle for $26,737.56, the amount identified by the appellants in their complaint as their rightful basic award. No offer of interest or costs was forthcoming from the government.
 
 
 10
 Attorneys' fees now not unsurprisingly became an issue, and negotiations for a settlement fell apart. Mr. Hoad later explained that if Mr. Neece's offer were to be "a prelude to serious discussions to settle this matter let it be known that in addition to the $26,737.56 wrongfully taken from plaintiffs, it is my information and belief that plaintiffs have suffered actual damages of $2,500,000.00 in loss of medical practice and emotional distress; $2,500,000.00 in punitive damages; $125,000 in attorney fees and costs; and loss of use of $26,737.56 ... for the last 12 years...." Declaration of Robert Hoad dated June 19, 1990. Mr. Hoad also refused the belated offer of a hearing, charging that so much time had passed that appellants' ability to respond to the Department's unyielding allegations of false claims had been prejudiced, and that a hearing now would be futile.
 
 
 11
 Faced with this impasse consisting of two parties now some 5 million dollars apart and unable to settle this escalating conflict, the district court ruled on July 24, 1990, in accordance with the position taken by the Department that "plaintiffs have refused the offer of a hearing by the Department of Health and Human Services. Therefore, plaintiffs have failed to exhaust their administrative remedies, and this court is without jurisdiction to pass on the substantive issues raised in [plaintiffs'] 'Motion for Reversal and Damages.' Since no administrative hearing has been held, there is no administrative decision for this court to reverse." Order of the Honorable Howard B. Turrentine dated July 24, 1990, entered July 26, 1990. It is this adverse order that plaintiffs appeal. We note in a manner of foreshadowing that the plaintiffs' "Motion for Reversal and Damages" introduced for the first time (as far as we can tell) into this expanding conflict elaborate claims under the Fifth Amendment, both procedural and substantive, the Ninth Amendment, and the Federal Torts Claims Act, 28 U.S.C. § 1346 (1988).
 
 II
 
 12
 We address first Dr. Klein's request that we should deem the Secretary to have waived by unjustifiable inattention and delay the exhaustion requirement regarding the ordered administrative hearing. There is considerable authority permitting us to do this so long as the disputed claim has been presented to the Secretary for resolution. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("Mathews"). Once it has been shown that this nonwaivable element of presentation has been satisfied, as in the present case, the Court in Mathews held that the jurisdictional exhaustion of remedies requirement in connection with a review of a decision of the Secretary may be waived by a court. Id. at 328-30, 96 S.Ct. at 899-900. In essence, Mathews permits a court under certain prescribed circumstances to excuse exhaustion where "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment [of a lack of finality] is inappropriate." Id. at 330, 96 S.Ct. at 900.
 
 
 13
 To determine the scope of our authority in this regard and to identify the factors that govern our exercise of it concerning appellants' underlying claim to $26,737.26, we turn first to Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926). In that case, the Supreme Court was faced with a state commerce commission that had for two years "remained practically dormant" even though it had been ordered by a state court to take action. When the commission was hailed into court for failing to act, it claimed its process had not yet been appropriately exhausted by the plaintiffs. Basing its decision on the commission's unreasonable and unjustifiable delay, the Court dismissed this claim and accommodated plaintiff's request for equitable relief.
 
 
 14
 Citing Smith, the Court in 1989 reiterated the proposition that "administrative remedies that are inadequate need not be exhausted." Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) ("Coit"). The Court in Coit evidenced concern about factors such as unconscionable delay, the denial of a litigant's day in court, and the negative effect of delay on a litigant's assets. Id. at 587, 109 S.Ct. at 1376. All three factors are present in the instant case, especially in view of the government's unwavering allegation that it need not give Dr. Klein interest on the money that was originally withheld from him years ago. That sum is still held by the Department without earning interest. If the government turns out on remand to be correct in its assessment of the unavailability of interest, at least the disputed sum will be made available to the appellants without further delay.
 
 
 15
 The government correctly admits that "the lengthy delay in offering a hearing would appear 'unfair' " and offers Dr. Klein $26,737.56 representing the core of the current dispute. It is apparent from this record that this is the most the appellants could get from an administrative hearing even though the Department continues to claim that if permitted (or forced) to litigate, it will win and the appellants will get nothing. As to the core of the initial dispute, the Department's offer itself sounds very much like a waiver of an administrative hearing notwithstanding the Department's vigorous defense of the district courts' decision.
 
 
 16
 However, $26,737.56 is no longer what appellants allege this case is all about. Although "pleaded" with a lack of specificity that is astonishing, appellants' complaint lays claim to numerous Constitutional causes of action arising out of the Department's alleged mishandling of their claim for reimbursement. These Constitutional claims will not be resolved in the administrative process to which the Department claims appellants should be sent.
 
 
 17
 This presents us with a hybrid situation similar to that confronted by this court in Boettcher v. Secretary of Health and Human Services, 759 F.2d 719 (9th Cir.1985) ("Boettcher"). Relying on Mathews, we affirmed in Boettcher the principle that whether a court shall waive the exhaustion requirement is influenced by the existence in the controversy of a collateral colorable Constitutional challenge that is unsuited to resolution in the relevant administrative form. As in the relevant precedent, it appears here that denying or upholding in an administrative hearing appellants' entitlement to the $26,737.56 "would not answer [their] constitutional challenge." Boettcher, 759 F.2d at 721. This factor weighs heavily on whether the ordinary need to exhaust administrative remedies may be excused, and it strongly suggests in combination with other factors previously discussed that this controversy should be moved immediately to the district court for prompt resolution. See also Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977); Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466-67, 45 L.Ed.2d 522 (1975); Vargas v. INS, 831 F.2d 906, 908 (9th Cir.1987) (due process claims alleging "procedural errors" are exempt from the exhaustion requirement). Thus, we determine that the Secretary is indeed in default and shall be deemed to have waived both the required hearing as well as any defense that the hearing procedure to which Dr. Klein was entitled was not exhausted. Accordingly, the district court has jurisdiction pursuant to 42 U.S.C. § 405(g) and shall proceed to decide this case. We so hold notwithstanding the appellants' lassitude regarding their rights.
 
 
 18
 We express no opinion on (1) the merits of appellants' Constitutional and FTCA claims, (2) whether these claims are otherwise properly before the district court for resolution, (3) the applicability of Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) or Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), or (4) whether interest, costs, and attorneys' fees are available to appellants.
 
 CONCLUSION
 
 19
 This matter is remanded to the district court with instructions to enter a judgment in favor of the appellants in the amount of $26,737.56, and for further proceedings consistent with this opinion. This panel retains appellate jurisdiction of this case.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 [1]
 42 U.S.C. §§ 1395j-1395x (1988)
 
 
 [2]
 At oral argument, Mr. Hoad again claimed he had written a letter to the Secretary asking that the hearing be scheduled. He was asked to provide us with a copy. In a letter dated September 24, 1992, Mr. Hoad advises us that an exhaustive search of his files has failed to turn up any such letter