**UNITED STATES, Plaintiff,**

v.

**UNIVERSITY OF MASSACHUSETTS MEMORIAL MEDICAL CENTER, Defendant.**

**No. CIV.A. 03–10195–WGY.**

United States District Court, D. Massachusetts.

Dec. 19, 2003.

Nancy Rue, United States Attorney's Office, Boston, MA, for USA, Plaintiff.

Richard P. Ward, Ropes & Gray LLP, Boston, MA, for University Of Massachusetts Memorial Medical Center, Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The United States alleges that the defendant, the University of Massachusetts Medical Memorial Center ("UMass"), improperly received overpayments for outpatient laboratory services provided to Medicare beneficiaries. Seeking to recoup those overpayments, the United States initiated the present suit, asserting common law causes of action for unjust enrichment and payment under mistake of fact, and requesting various equitable remedies including an accounting, disgorgement of improper gains, imposition of a constructive trust, and prejudgment interest. UMass moved to dismiss for lack of subject matter jurisdiction.

## I. PROCEDURAL AND REGULATORY BACKGROUND [1]

The United States alleges that UMass, in providing and billing for Medicare services, has submitted claims resulting in systematic overpayment. Compl. [Doc. No. 1] ¶¶ 66, 71, 74, 75, 81. The specific claims at issue are those submitted for complete blood counts and for blood chemistry tests performed on an outpatient basis between July 1, 1993, and December 31, 1996. Id. ¶¶ 66, 75. While the parties dispute precisely how these claims were reimbursed, they agree that the Department of Health and Human Services ("HHS"), the agency charged with administering the Medicare program, determined and paid out the reimbursements,

and that UMass received them. Id. ¶¶ 75, 86; Def.'s Reply Br. [Doc. No. 14] at 2.

As the United States stated at oral argument on September 11, 2003, its Complaint reflects the findings of a nationwide investigation of Medicare billing conducted by the Department of Justice. Having removed the inquiry from HHS, the United States argues that it is neither appropriate nor necessary to return the matter to the agency to exhaust administrative procedures. See Pl.'s Opp'n [Doc. No. 12] at 10–12 (arguing, inter alia, that "[t]his is because [administrative] remedies are simply inapplicable to claims brought by the United States," and that "[f]rom a factual standpoint, no administrative process is appropriate because the United States' allegations in this case are very simple.").

Citing the United States' failure to exhaust, UMass seeks dismissal or judgment on the pleadings based on a lack of subject matter jurisdiction, on considerations of justiciability, and on the adequacy of legal remedies. Def.'s Mot. to Dismiss. [Doc. No. 9]; Def.'s Mem. in Support [Doc. No. 10] at 1. The Court begins, as it must, by considering its subject matter jurisdiction.

## II. DISCUSSION

### A. Legal Standard

■■■ On a motion to dismiss under Rule 12(b)(1), "the party invoking federal court jurisdiction bears the burden of proving its existence." Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 200 (1st Cir.2000). Proper construction of the complaint depends on the nature of the movant's challenge. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir.2001). If the challenge is

1. Consistent with the standard for review of a factual challenge to subject matter jurisdiction, the Court draws the following facts primarily from the United States' Complaint, Memorandum in Opposition, and oral argument, but does not afford any presumptive weight to the jurisdictional averments made in those submissions. See section II.A below.

to the sufficiency of the facts supporting jurisdiction, the Court should credit the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences from them in his favor. *Id.* If, however, the challenge is to the accuracy of the facts supporting jurisdiction, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.*

■ Here, UMass challenges the accuracy of the facts supporting jurisdiction, urging the Court to "determine the relevant actual facts" rather than credit the allegations in the United States' Complaint. Def.'s Mot. to Dismiss at 1. The Court accordingly enjoys "considerable leeway" in deciding any "factbound jurisdictional question[s]." *Valentin,* 254 F.3d at 364. The Court must weigh the proof and draw reasonable inferences to satisfy itself that subject matter jurisdiction exists. *Id.*

**B. 42 U.S.C. § 405(h)**

■ UMass asserts that Section 405(h) bars an exercise of subject matter jurisdiction over the present action, which seeks review of the Secretary's reimbursement determinations prior to administrative exhaustion. Def.'s Mem. in Support at 7–11. In response, the United States contends that the jurisdictional limits imposed by Section 405(h) apply to actions brought *against* the United States only. Pl.'s Opp'n at 6–10. In support of this interpretation, the United States contends, *inter alia,* that requiring it to exhaust the administrative process would be inappropriate and unnecessary. Pl.'s Opp'n at 10–12.

The threshold question whether the limits imposed by Section 405(h) apply to actions brought by the United States appears to be one of first impression in this Circuit.[2]

Before proceeding, the Court emphasizes that this Memorandum does not concern an action brought under the False Claims Act. *See* 31 U.S.C. §§ 3729–33 (2000). Actions brought under the False Claims Act do not fall within the special competence of HHS. Rather, actions brought under the "expansively" written False Claims Act seek "to reach all types of fraud," committed on all types of agencies. *Cook County v. United States ex rel. Chandler,* 538 U.S. 119, 123 S.Ct. 1239, 1246, 155 L.Ed.2d 247 (2003) (quoting *United States v. Neifert–White Co.,* 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968)). Moreover, claims alleging fraud and falsity fall "within the conventional experience of judges." *In re Long Distance Telecomm. Litig.,* 831 F.2d 627, 633 (6th Cir.1987) (quoting *Far East Conf. v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952)).

Here, however, the United States seeks to recover overpayments due not to fraud or falsity but to misinterpretation of Medicare regulations. The United States' claims are accordingly "inextricably intertwined" with reimbursement determinations that are the subject of the Secretary's particular experience and expertise. *See Heckler v. Ringer,* 466 U.S. 602, 614, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); 42 U.S.C. § 1395g ("The Secretary shall periodically determine the amount which should be paid under this part to each provider of services ...."). Because Section 405(h) has been interpreted to assure the Secretary "greater opportunity to ap-

---

**2.** In *McCuin v. Secretary of Health & Human Servs.,* 817 F.2d 161 (1st Cir.1987), the First Circuit considered the scope of Section 405(h), but with respect to the type of challenge raised rather than the identity of the party raising the challenge. *See id.* at 166 (concluding that Section 405(h) bars challenges to the amounts of Medicare determinations but not to the procedures used to make those determinations).

ply, interpret, or revise policies, regulations, or statutes," the provision assumes special significance in the present action. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000).

In construing Section 405(h) as it applies here, the Court follows the "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE, Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Section 405(h), as applied to the Medicare Act, provides:

> Finality of [Secretary's] decision
>
> The findings and decision of the [Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h), as applied by 42 U.S.C. § 1395ii.

The second sentence of Section 405(h) provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed . . . except as herein provided." 42 U.S.C. § 405(h). No part of the sentence suggests that review is limited only in actions brought against the United States. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (rejecting a narrow interpretation of Section 405(h) as inconsistent with the "sweeping and direct" language of the provision's third sentence). Indeed, if application of the second sentence were limited to actions brought against the United States, it would be largely superfluous because actions "against the United States, the Secretary, or any officer of employee thereof" are independently barred by the third sentence. *Cf. id.* at 758, 95 S.Ct. 2457 (rejecting an interpretation that relegated the third sentence of Section 405(h) "to a function which is already performed by other statutory provisions").

This Court's reading of Section 405(h) is supported by previous constructions by the Supreme Court and by other lower courts. In *Salfi*, the Supreme Court concluded that the third sentence of Section 405(h), if properly construed to have independent significance, extended beyond "a codified requirement of administrative exhaustion." *Id.* at 758, 95 S.Ct. 2457. The Supreme Court's conclusion was based in part on its interpretation of the first two sentences of Section 405(h). *Id.* at 757–59, 95 S.Ct. 2457. The Supreme Court noted that those sentences, wholly apart from the third sentence, "assure that administrative exhaustion will be required" and more specifically, "prevent review of decisions of the Secretary save as provided in the Act." *Id.* at 758, 95 S.Ct. 2457. In a footnote,[3] the Supreme Court explained

---

**3.** Based in part on this footnote in *Salfi*, the Court rejects the United States' contention that the phrase "decision of the [Secretary]," as used in the second sentence of Section 405(h), should be interpreted to refer to a "final decision of the [Secretary] made after a hearing," as used in Section 405(g). *See* Pl.'s Opp'n at 4 & n. 2. *Salfi* expressly interprets Section 405(h) to apply even to "nonfinal decisions." *Salfi*, 422 U.S. at 759 n. 6, 95 S.Ct. 2457. Moreover, Congress' use of different phrases in Sections 405(h) and (g) suggests that it intended to convey different meanings. *See Pastore v. Medford Sav. Bank*, 186 B.R. 553, 555 (D.Mass.1995) (Lindsay, J.) ("Where Congress has carefully employed a term in one place but excluded it in another, it should not be implied where excluded.") (quoting *McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.1972)).

that "by virtue of the second sentence," even a "nonfinal" determination by the Secretary "may not be reviewed save pursuant to § 405(g)."[4]  *Id.* at 759 n. 6, 95 S.Ct. 2457.

Consistently with *Salfi*, the United States District Court for the District of Idaho concluded that Section 405(h) "does not merely apply to actions brought against the government to recover benefits under the Medicare Act." *United States v. Idaho Falls Assocs. Ltd. Partnership*, 81 F.Supp.2d 1033, 1049 (D.Idaho 1999). The court in *Idaho Falls* focused on the second sentence of the provision, which "makes clear that a court is precluded from undertaking judicial review of any findings of fact or decisions of the Secretary except as provided in the Medicare Act itself." *Id.* Accordingly, the court concluded that Section 405(h) applied to an action brought by the United States against a Medicare provider and barred jurisdiction over the provider's defense to liability. *Id.* at 1049, 1051. Although *Idaho Falls* interpreted Section 405(h) to bar consideration of the defendant's rather than the plaintiff's claims, it applied the provision in the same context as that presented here, in which the United States has brought suit to recover alleged overpayments. *Id.* at 1036. *Idaho Falls* and *Salfi* thus suggest that

the second sentence of Section 405(h) bars jurisdiction over this action.[5]

The United States nevertheless argues that the third sentence of Section 405(h), which refers only to actions brought against the United States under 28 U.S.C. §§ 1331 or 1346, "manifests Congress' intent that actions brought *by* the United States [under 28 U.S.C. § 1345] are excluded from its scope." Pl.'s Opp'n at 7. As an initial matter, the Court notes that its interpretation of Section 405(h) rests largely on the second sentence of the provision rather than the third. Perhaps, then, the United States' argument should be read as urging an interpretation of the second sentence that considers the context provided by the third. Yet the context of the surrounding sentences provides further support for the Court's interpretation. As stated above, because the third sentence of Section 405(h) independently bars jurisdiction over actions brought against the United States, limiting application of the second sentence to very same actions would render it largely "superfluous." *Cf. Salfi*, 422 U.S. at 758, 95 S.Ct. 2457 (rejecting an interpretation of the third sentence of Section 405(h) which not only "ignored that sentence's plain language," but also "relegated it to a function which is already performed by other statutory provisions").

---

**4.** As applied to the Medicare Act, Section 405(g) provides, in relevant part:

Judicial review

Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.

42 U.S.C. § 405(g), as applied by 42 U.S.C. § 1395ii.

**5.** Although *Salfi* focused on judicial review available under Section 405(g), the Supreme

Court in *Illinois Council*, 529 U.S. 1, 120 S.Ct. 1084, suggested that the crucial determination is not whether review is available under Section 405(g), but rather whether review is available at all. *Id.* at 19, 120 S.Ct. 1084. The United States does not dispute that review is available under the "administrative process[es]" for recoupment. *See* Pl.'s Opp'n at 10–12; *see also National Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1137 (D.C.Cir.1992) ("Under the Medicare legislation HHS has established elaborate procedures for recoupment of overpayments to suppliers.").

The United States responds with several cases that it believes suggest that Section 405(h) does not require the United States to exhaust administrative remedies when it is the plaintiff. Pl.'s Opp'n at 9. These cases, however, are distinguishable. *United States ex. rel. Body v. Blue Cross and Blue Shield of Alabama, Inc.*, 156 F.3d 1098 (11th Cir.1998), for example,[6] considered whether Section 405(h) barred jurisdiction over an action brought under the False Claims Act, an issue that, as emphasized above, is not before this Court. Moreover, the *Body* court based its decision in part on the belief that its interpretation was "further confirm[ed]" by Supreme Court case law, and in particular, was "perhaps most clearly" supported by *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). *Body*, 156 F.3d at 1104, 1109. The panel read *Michigan Academy* as demonstrating that Section 405(h) "simply seeks to preserve the integrity of the administrative process Congress designed to deal with challenges to amounts determinations by dissatisfied beneficiaries." *Id.* at 1109. Yet the Supreme Court has since clarified its holding in *Michigan Academy*, explaining that the words of the opinion "do not limit the scope of 405(h) itself to instances where a plaintiff, invoking § 1331, seeks review of an 'amount determination.'" *Illinois Council*, 529 U.S. at 17, 120 S.Ct. 1084.[7] The Supreme Court considered it "more plausible" to read *Michigan Academy* as holding that Section 405(h) does not apply "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19, 120 S.Ct. 1084. This exception to Section 405(h) is inapplicable here, as the agency has clearly established procedures to review and to redress overpayments to providers. *See National Kidney Patients Association*, 958 F.2d at 1137. The fact that the United States apparently may not obtain review absent a determination of overpayment by an intermediary, a carrier, or HHS does not alter the analysis. *Cf. Your Home Visiting Nurse Servs. v. Shalala*, 525 U.S. 449, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999) (concluding that a Medicare provider may not obtain review of an intermediary's refusal to reopen a notice of program reimbursement).

In further support of its interpretation, the United States argues that requiring it to exhaust would be "inappropriate and unnecessary." Pl.'s Opp'n at 10–12. First, the United States asserts, based on *Salfi*, that "administrative exhaustion is not appropriate when the action is brought

---

**6.** The other cases cited by the United States include two decisions that declined to apply Section 405(h) to pre–1973 claims, for which there were no statutory procedures for provider appeals. *See United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir.1983); *United States v. Aquavella*, 615 F.2d 12 (2d Cir.1979). Because Congress amended the Medicare Act in 1972 to provide appeals procedures for provider overpayments, the conclusions reached in *California Care* and *Aquavella* are no longer persuasive. *See Idaho Falls*, 81 F.Supp.2d at 1049–50.

The United States also cites *Klein v. Heckler*, 761 F.2d 1304 (9th Cir.1985). Pl.'s Opp'n at 9. *Klein* relied upon *California Care* to support the proposition that the Ninth Circuit

"ha[s] recognized jurisdiction" over normal recoupment actions. *Id.* at 1309. *California Care*, however, made clear that its exercise of jurisdiction extended only to pre–1973 cost reporting years. *Id.* 709 F.2d at 1246.

**7.** For an opinion continuing to rely on *Body's* reasoning even after the Supreme Court's decision in *Illinois Council*, see *United States v. Rogers*, 2001 WL 818160 (E.D.Tenn. June 28, 2001). The context of *Rogers*, however, appears more closely analogous to that of *Body* than to that of the present action. In *Rogers*, as in *Body*, the suit was brought under the False Claims Act to recover reimbursements for false and fraudulent claims. *Rogers*, 2001 WL 818160, at *1.

on behalf of the Secretary rather than on behalf of a claimant." Pl.'s Opp'n at 8. This reliance on *Salfi*, however, is misplaced. The Secretary in *Salfi*, as a party to the action, had not challenged the appellees' allegations of exhaustion. *Salfi*, 422 U.S. at 767, 95 S.Ct. 2457. The Supreme Court interpreted this "to be a determination by him that ... the reconsideration determination is 'final.'" *Id.* The United States has not, either in its written or oral arguments, presented facts upon which this Court could base a similar determination. Indeed, at oral argument, the United States reported that the overpayment determination had been made by the Department of Justice independently of the Secretary. Accordingly, acting within its "considerable leeway" to resolve factual disputes regarding its jurisdiction, *Valentin*, 254 F.3d at 362, this Court interprets the United States' omissions and assertions as conceding that it has not exhausted agency procedures.

Second, the United States contends that barring judicial review of the present claims would be "inconsistent with, and nonsensical under" the following Medicare regulations:

> (c) Amount of claim. [Center for Medicare and Medicaid Services] refers all claims that exceed $100,000 ... to the Department of Justice or the General Accounting Office for the compromise of claims, or the suspension or termination of collection action.
>
> (f) Fraud. The regulations in this subpart do not apply to claims in which there is an indication of fraud, the presentation of a false claim, or misrepresentation on the part of a debtor or any other party having an interest in the claim. [Center for Medicare and Medicaid Services] forwards these claims to the Department of Justice for disposition under 4 C.F.R. § 105.1.

42 C.F.R. § 401.601(c), (f); Pl.'s Opp'n at 10. The United States argues that if Section 405(h) is broadly construed to bar review of all claims absent administrative exhaustion, the government "would be effectively foreclosed from collecting" claims exceeding $100,000 or indicating fraud, falsity, or misrepresentation, claims for which the above regulations have limited agency review. *Id.*

While the United States' concerns are legitimate, they are wide of the mark, involving actions and claims very different from those raised here. The claims described in 42 C.F.R. § 401.601(c) are referred to the Department of Justice or General Accounting Office for compromise, suspension, or termination only. Because courts reviewing those actions are not called upon to determine the appropriate amount due, they are less directly involved in interpreting the "hundreds of pages of statutes and thousands of pages of often interrelated regulations" that are the subject of the Secretary's expertise. *Illinois Council*, 529 U.S. at 13, 120 S.Ct. 1084. Here, however, the United States asks the Court to "determine whether UMass billing practices comported with Medicare requirements." Pl.'s Opp'n at 13. The United States claims are in this way "inextricably intertwined" with Medicare's complex statutory and regulatory scheme, which entrusts reimbursement determinations, at least initially, to the Secretary. *See Ringer*, 466 U.S. at 611, 104 S.Ct. 2013.

The claims described in 42 C.F.R. § 401.601(f), which indicate fraud, falsity, or misrepresentation, are also distinguishable. Because such claims "fall within the conventional experience of judges," they "do not require agency expertise for their treatment." *Long Distance Telecomm. Litig.*, 831 F.2d at 633 (quoting *Far East Conference*, 342 U.S. at 574, 72 S.Ct. 492);

see *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 580–81 (1st Cir.1979) (concluding that the appropriateness of deference to agency expertise depends in part on "whether the agency determination l[ies] at the heart of the task assigned the agency by Congress"). In contrast, even under the United States' simplified version of its allegations, the present claims require interpretations of HHS reimbursement regulations and manuals. In the complex scheme of Medicare reimbursement, the First Circuit has afforded the Secretary "a heightened degree of deference," acknowledging that Congress recognized legislators' and judges' lack of medical expertise and accordingly assigned the Secretary primary responsibility for "assessing reasonable costs owed to Medicare providers." *La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992) (quoting *Butler County Memorial Hosp. v. Heckler*, 780 F.2d 352, 356 (3d Cir.1985)). The Court thus considers it appropriate to defer to the Secretary's interpretations and applications of Medicare reimbursement regulations.

In partial response, the United States maintained at oral argument that it would be "administratively inefficient" to remove claims that indicate fraud, falsity, or misrepresentation to the Department of Justice, only to return those claims that do not in fact involve fraud to HHS before permitting judicial review. While this Court does not discount the seriousness of potential inefficiency, it shares the view expressed by the Supreme Court in *Illinois Council:* the assurance of expertise and uniformity provided by Section 405(h) "comes at a price." *Illinois Council*, 529 U.S. at 13, 120 S.Ct. 1084. The language of Section 405(h) suggests that in Congress' judgment, paying the price of occasional inefficiency was justified to prevent "possibly premature interference by different individual courts" applying different interpretations of Medicare's complex statute and regulations. *Cf. id.* (reasoning that it was "the judgment of Congress" that paying the price of "occasional individual, delay-related hardship" was justified in the context of a "massive, complex health and safety program").

Notwithstanding the contrary assertions of the United States, the Court concludes that Section 405(h) bars an exercise of subject matter jurisdiction over this action. Because this issue is dispositive, the Court does not address UMass' arguments regarding the doctrines of primary and exclusive jurisdiction, considerations of justiciability, or the adequacy of legal remedies.

## III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. No. 9] is ALLOWED.

SO ORDERED.