UNITED STATES of America, Plaintiff,

v.

TENET HEALTHCARE CORP, et al., Defendants.

No. CV04–857 GAF(JTLX).

United States District Court, C.D. California.

Nov. 5, 2004.

Gary Plessman, Chief, Civil Fraud Section, United States Attorney's Office, Central District of California.

David K. Barrett, Assistant United States Attorney, Civil Fraud Section, United States Attorney's Office, Central District of California.

## MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

FEESS, District Judge.

### I.

### INTRODUCTION

The defendants named in this suit, 26 hospitals and their corporate owners, pro-

vide healthcare to thousands of patients, including many who are entitled to Medicare coverage for at least a portion of their treatment. To obtain Medicare reimbursement for the treatment of such patients, medical providers, like the defendant hospitals, must submit to the government a claim to which they assign codes that determine the fee the government will pay for the treatment. Treatment for serious illnesses generates a higher reimbursement than treatment for minor, or less serious, conditions.

The variation in fees paid for services rendered creates an opportunity for an unscrupulous healthcare provider to increase its revenue by "upcoding"—assigning codes to a claim that will generate a higher reimbursement to the provider than the patient's condition would warrant if the reimbursement claim were properly coded. Here the government, asserting jurisdiction under 28 U.S.C. § 1345, which creates federal subject matter jurisdiction over suits brought by the United States, accuses Defendants of engaging in that practice, and seeks recovery of overpayments under theories of common law mistake and negligent misrepresentation.

Defendants now move the Court to dismiss this case on the ground that Congress has implicitly divested the Court of its § 1345 jurisdiction in Medicare overcharging cases. According to Defendants, the reimbursement scheme established under the Medicare Act provides the only means by which the government can challenge a claim or seek reimbursement for an overpayment and therefore "preempts" suits by the United States under § 1345. Although the Medicare Act does not expressly bar suits under that statute, Defendants note that § 1345 establishes jurisdiction over suits brought by the United States "[e]xcept as otherwise provided by Act of Congress." Defendants contend that the provisions of the Medicare Act, notably 42 U.S.C. § 405(h), and the regulations issued thereunder, reflect Congressional intent to preclude the United States from seeking recovery for overbilling by medical providers. In opposition, the United States contends that nothing in the Medicare Act, or in any regulation, expressly limits this Court's § 1345 jurisdiction, and that the Court should not infer such a limitation where Congress has not clearly spoken.

Although Defendants present carefully crafted, non-frivolous arguments in support of their position, the Court concludes that the motion should be DENIED. The Court will not lightly infer a congressional intent to limit the United States' remedies when the protection of the public fisc is at stake. Since no clear evidence establishes a congressional intent to limit the government's ability to bring suit to recover overpayments of Medicare funds, the Court declines to infer such an intent.

## II.

### BACKGROUND

Defendants are 26 individual hospitals and their corporate owners, Tenet Healthcare Corp. and Tenet HealthSystems Medical, Inc. (collectively, "Defendants"). (Compl. ¶ 2; Attach. A). During the relevant time period, the 26 hospitals were owned by American Medical International Inc. ("AMI"), which became known as Tenet HealthSystem Medical, Inc. after it was acquired by Tenet Healthcare Corp. ("Tenet"). (*Id.* ¶¶ 22–24, 28). The individual hospitals are being sued for their alleged conduct before AMI was acquired by Tenet. (*Id.* ¶ 5). Tenet is being sued for the conduct of AMI and its hospitals during the entire period from September 1992 until March 1995. (*Id.* ¶ 4–5; Attach. A).

According to the complaint, the AMI hospitals received Medicare payments to which they were not entitled because they

submitted more than 2,400 inaccurate claims for reimbursement during the period from September 1992 until March 1995. (*Id.* ¶¶ 7–12, 114). To obtain Medicare reimbursements, the hospitals submitted claims to the government. (*Id.* ¶ 7, 44). On the claim forms, the hospitals indicated a patient's diagnosis, procedures performed, age, sex and discharge status by designating codes. (*Id.* ¶¶ 42–47). On the basis of this coded information, the government classified each patient's claim and assigned it to a Diagnosis Related Group ("DRG"). (*Id.*). The government then made a payment to the hospital based on the claim's DRG. (*Id.*).

Plaintiff alleges that the hospitals submitted claims that contained diagnosis and procedure codes that were not supported by the patients' medical records, and which improperly designated secondary diagnoses as primary diagnoses. (*Id.* ¶ 8). On the basis of these submissions, the government assigned the claims a higher-paying DRG than they would have received if they had been accurately and properly coded by the hospital. (*Id.* ¶¶ 8–11). Plaintiff further alleges that the hospitals coded the patient claims inaccurately to obtain a higher level of reimbursement than the patients' conditions warranted. (*Id.* ¶ 8). To recover the alleged overpayments, the government brings this action under 28 U.S.C. § 1345, and seeks recovery under common law causes of action for payment by mistake of fact, and negligent misrepresentation.

### III.

### DISCUSSION

**A. *Legal Standard for Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)***

Federal courts "possess only that power authorized by Constitution and stat-

ute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). As a result, a court without jurisdiction over certain claims has no choice but to dismiss them regardless of their gravity or potential validity. Indeed, federal courts are to determine issues of subject matter jurisdiction before even considering the merits of a case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). In doing so, the Court assumes that the allegations in the complaint are true. *Valdez v. United States,* 837 F.Supp. 1065, 1067 (E.D.Cal. 1993). But, any party seeking to invoke this Court's limited jurisdiction bears the burden of establishing that jurisdiction by a preponderance of the evidence. *In re Ford Motor Co./Citibank (S.D.),* 264 F.3d 952, 957 (9th Cir.2001) (citing *McNutt v. General Motors Acceptance Co.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

**B. *The Jurisdictional Challenge***

Pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants now move to dismiss the suit on the ground that the common law claims cannot be pursued because they are barred by the Medicare Act and regulations promulgated under authority of that act. In support of their motion, Defendants present two basic arguments: (1) Section 405(h) of the Social Security Act, which has been incorporated into the Medicare Act, expressly precludes judicial review of reimbursement determinations except as provided by the Act, which permits only providers and beneficiaries to appeal a reimbursement or benefits determination via suit in District Court;[1] and (2) the comprehensive nature

---

1. Section 405(h) provides: "The findings and

decisions of the [Secretary of Health and Hu-

of the Medicare Act and related regulations preempts any "outside the system" common law recoupment actions. The United States counters that nothing in the statute expressly or impliedly repealed or limited this Court's jurisdiction under § 1345 to hear its claims, and that any limitations set forth in the Medicare Act regarding the jurisdiction of the federal courts impose restrictions only on challenges by recipients of Medicare funds. Because the United States has brought this action, it bears the burden under Rule 12(b)(1) of establishing jurisdiction in this suit. *In re Ford Motor Co./Citibank (S.D.)*, 264 F.3d at 957.

## C. *The Government's Suit Is Not Barred by the Medicare Act*

The Medicare Act, and regulations promulgated under that act, establish a system under which providers, such as the AMI hospitals, seek reimbursement through "fiscal intermediaries," usually private insurance companies. *See* 42 U.S.C. § 1395h. The intermediary, after receipt of a claim for payment, notifies the provider of the amount allowed. If dissatisfied, the provider may request the intermediary to reopen the initial determination, in which case the matter is submitted to a hearing officer or panel, or initiate proceedings before the Provider Reimbursement Review Board (the "Board") for a redetermination. *See* 42 C.F.R. § 405.1807. Within three years of the decision, a provider may seek to reopen the administrative determination; likewise, the intermediary, Board or Secretary may, on

its own motion, reopen the proceedings. *Id.*, at § 405.1885. A provider may obtain judicial review of decisions by the Board under 42 U.S.C. § 1395oo(f)(1).

This comprehensive regulatory scheme was developed to provide due process protections to providers whose claims for reimbursement were denied by the government. *See United States v. Aquavella*, 615 F.2d 12, 20 (2d Cir.1979); *United States v. Idaho Falls Assocs.*, 81 F.Supp.2d 1033, 1049–50 (D.Idaho 1999). The objective of the scheme, however, provides no support for the proposition that it therefore precludes the government from seeking relief for overpayments in federal court under the False Claims Act or the common law. With only one exception, courts that have considered the question have unmistakably rejected the notion that the Medicare Act's statutory and administrative scheme limits the government's remedies for overpayment of reimbursements to Medicare providers.

### 1. *Section 405(h) Does Not Preclude Jurisdiction over § 1345 Actions*

As noted above, the administrative review scheme set forth in 42 U.S.C. § 405(h) was borrowed from the Social Security Act. *Aquavella*, 615 F.2d at 17–18. As a part of the comprehensive Social Security benefits system, Section 405(h) was enacted to prevent disgruntled Social Security claimants from bringing actions in federal court before exhausting the administrative appeals process. *Id.* at 18 (citing *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Likewise,

man Services] after a hearing shall be binding upon all individuals who were parties to such a hearing. No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency *except as herein provided.* No action *against* the United States, the [Secretary], or any officer or employee thereof shall be brought under

section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h) (emphasis added). Under 42 U.S.C. § 1395oo(f)(1), a provider may obtain judicial review of an adverse administrative decision after exhausting the administrative appeals process.

under the Medicare Act, § 405(h) serves to channel disputes by providers or beneficiaries through the administrative process before allowing access to the federal courts. *See United States ex rel. Body v. Blue Cross & Blue Shield,* 156 F.3d 1098, 1104 (11th Cir.1998); *Daniel Freeman Mem'l Hosp. v. Schweiker,* 656 F.2d 473, 475–76 (9th Cir.1981); *Pacific Coast Med. Enters. v. Harris,* 633 F.2d 123, 137, 138 (9th Cir.1980).

The parties readily acknowledge that this language limits access to the federal courts on the part of providers and beneficiaries. Defendants go a step further, however, and argue that § 405(h) explicitly precludes jurisdiction over a common law action *by the government* to recover overpayments where no final administrative determination of overpayment has been made by the Secretary. Defendants rely in particular on the second sentence of § 405(h), which states that "No findings of fact or decision of the [Secretary] shall be reviewed by any ... tribunal ... *except as herein provided.*" 42 U.S.C § 405(h) (emphasis added). Because, as explained above, only providers and beneficiaries have access to the federal courts under the appeals provisions of the Medicare Act, Defendants argue that it follows that the government may only recover for inflated claims by acting within the confines of the administrative scheme and obtaining an administrative determination of overpayment.[2] The majority of courts that have considered the preclusive effect of § 405(h) on suits by or on behalf of the government to recover overpayments have rejected Defendants' position. *See U.S. ex rel. Body v. Blue Cross,* 156 F.3d 1098 (11th Cir. 1998); *United States v. Lahey Clinic Hospital,* 2004 WL 950448, 2004 U.S. Dist.

LEXIS 7572 (D. Mass. April 30, 2004); *United States v. Rogers,* 2001 WL 818160, 2001 U.S. Dist. LEXIS 24914 (E.D. Tenn., June 28, 2001); *but see United States v. University of Mass. Memorial Med. Center,* 296 F.Supp.2d 20 (D.Mass.2003).

#### a. The Majority View Supports a Finding of Jurisdiction

In *United States v. Rogers,* the defendant-provider argued that § 405(h) barred a common law and False Claims Act suit by the government in district court to recover overpayments because the action arose under the Medicare Act, which established an administrative appeals process as the sole avenue for review of reimbursement claims. *Rogers,* 2001 WL 818160 at *1, 22, 2001 U.S. Dist. LEXIS 24914 at *2, *67. Rejecting the provider's argument, the court explained that § 405(h) applied only where both standing to assert the claim and the substantive basis for the claim arose under the Medicare Act. *Id.* at *24, at *75. Where the government's standing is rooted in the False Claims Act and similar common law doctrine, which also provide the substantive basis for relief, § 405(h) is not controlling. *Id.* at *21, at *78 (citing *Shalala v. Illinois Council,* 529 U.S. 1, 12, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) ("405(h) applies where both the standing and the substantive basis for the presentation of a claim is the Medicare Act.") (internal quotation marks omitted) and *Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (same)). "The [False Claims Act] and the common law provide a separate, independent basis for [a district court] to exercise subject matter jurisdic-

---

**2.** Defendants, however, conceded at oral argument that an action may be brought under the False Claims Act, whether or not an administrative overpayment determination has

been made. As discussed below, the distinction between an action to recoup under the common law and under the False Claims Act is one without a difference.

tion over the government's claims." *Id.* at *24, at *75; *accord U.S. v. Lahey Clinic Hospital,* 2004 WL 950448, 2004 U.S. Dist. LEXIS 7572 (D. Mass. April 30, 2004) (§ 405(h) does not preclude jurisdiction over government's common law "mistake of fact" action to recover alleged Medicare overpayments to defendant hospital).

Similarly, in *United States ex rel. Body v. Blue Cross & Blue Shield,* the Eleventh Circuit held that an action brought on behalf of the government under the False Claims Act alleging Medicare fraud was not barred by § 405(h) because such cases do not "arise under" the Medicare Act. 156 F.3d at 1100, 1110. The *Body* court reasoned that, because the complaint was premised on the defendant's submission of false claims to the government, the False Claims Act provided both standing and the substantive basis for the claim, and § 405(h) did not apply. *Id.* at 1105–06. The court noted that there was no evidence that Congress, "in making subsection 405(h) applicable to Medicare (or enacting it as part of the Social Security Act, for that matter), intended to eliminate . . . jurisdiction . . . for [False Claim Act] actions. . ." *Id.* at 1106; *see also* at 1104 n. 12 (no evidence that Congress intended § 405(h) to preclude federal court jurisdiction over claims "other than those brought by beneficiaries challenging the denial of benefits or eligibility for benefits"). While the Supreme Court, in its decisions regarding the scope of § 405(h), has "sought to prevent claimants from circumventing the administrative framework designed by Congress to execute the Medicare Act," it "has not sought . . . to extend the reach of subsection 405(h) to bar claims that, although they may implicate benefits determinations, are certainly not veiled claims for benefits by a disgruntled beneficiary that could have, and should have, been

pursued administratively in the first instance." *Id.* at 1109.

■ Here, although the government's claim implicates reimbursement determinations, it is not the type of claim that falls within the scope of § 405(h). *See id.* at 1109. Since the Court is not faced with a claim for reimbursement from a dissatisfied provider that should be channeled through the administrative process, this case does not "arise under" the Medicare Act. *See id.* Rather, because the government's action is predicated on the submission of inaccurate and misleading claims, the common law, not the Medicare Act, provides both standing and the substantive basis for the claim. *Rogers,* 2001 WL 818160 at 25, 2001 U.S. Dist. LEXIS 24914 at *78; *cf. Body v. Blue Cross,* 156 F.3d at 1105–06. Thus, in accordance with relevant Supreme Court precedent, the "jurisdictional bar in 405(h) does not apply to [this] action filed by the United States government under . . . the common law . . . seeking to recover damages and restitution to be paid to the government." *Rogers,* 2001 WL 818160 at* 25, 2001 U.S. Dist. LEXIS 24914 at *78 (citing *Ill. Council,* 529 U.S. at 12, 120 S.Ct. 1084; *Heckler v. Ringer,* 466 U.S. at 615, 104 S.Ct. 2013).

### b. *Massachusetts Memorial is Unpersuasive*

Defendants rely on *United States v. University of Mass. Memorial Med. Center,* 296 F.Supp.2d 20 (D.Mass.2003), which rejected the majority view and held that § 405(h) barred subject matter jurisdiction over the government's common law recoupment action because the government failed to exhaust administrative remedies by not first obtaining an "overpayment determination" from the Secretary. *Id.* at 27–28. The court based its interpretation of § 405(h) "largely on the second sen-

tence of the provision,"[3] which the court read as requiring the government, as well as claimants, to exhaust remedies before seeking judicial relief. *Id.* at 24 ("No part of the sentence suggests that review is limited only in actions brought against the United States."). In support of its "plain reading" of the sweeping language of the second sentence, the court opined that the holdings in *Body* and *Rogers,* which limit the application of the second sentence to *claimants,* renders the sentence "largely superfluous" because actions against the government are separately barred by the third sentence.[4] *Id.*

This reasoning ignores the two vital and unique functions performed by the second sentence. First, the second sentence, unlike the third sentence, provides claimants access to the administrative appeals process and judicial review by means of the clause, "except as otherwise provided." Second, the sentence contains the only language in the provision that requires administrative exhaustion. Read without the second sentence, § 405(h) would bar *all* review of the Secretary's determinations, both administrative and judicial, and exhaustion would be irrelevant. Thus, this Court rejects the contention in *Massachusetts Memorial* that the majority's interpretation of § 405(h) renders the second sentence "superfluous."

The *Massachusetts Memorial* court claimed to find support for its expansive interpretation of § 405(h) in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *United States v. Idaho Falls Assocs.,* 81 F.Supp.2d 1033 (D.Idaho 1999). *Id.* at 24–25. Both cases focus on the scope and effect of the exhaustion requirement imposed on *provid-*

ers and *beneficiaries* by § 405(h), and provide no authority for the court's conclusion that § 405(h) bars review of the *government's* claim. *See Salfi,* 422 U.S. at 757, 95 S.Ct. 2457 (administrative exhaustion required in action for survivor's benefits under Social Security Act).

*Idaho Falls* was a suit brought by the government to recoup Medicare overpayments. 81 F.Supp.2d at 1033. The court held that it was precluded by § 405(h) from considering the merits of the *providers'* defenses to the action because they failed to appeal the Secretary's overpayment determinations to the Provider Reimbursement Review Board. *Id.* at 1049. The providers argued that § 405(h) did not require them to exhaust administrative remedies in this instance because the recoupment action was not "against" the United States. *Id.* The court responded that § 405(h) "does not merely apply to actions brought against the government to recover benefits under the Medicare Act. Rather, the second sentence of section 405(h) makes it clear that a court is precluded from undertaking judicial review of any findings of fact or decisions of the Secretary except as provided in the Medicare Act itself." *Id.*

Significantly, the *Idaho Falls* court did not suggest, even in dicta, that the second sentence of § 405(h) might apply to bar the government's recoupment action currently before it—or that the government was required to exhaust administrative remedies before pursuing a reimbursement claim in federal court. *Id.; see also Massachusetts Memorial,* 296 F.Supp.2d at 25 ("*Idaho Falls* interpreted Section 405(h) to bar consideration of the [provid-

---

3. "No findings of fact or decision of the [Secretary] shall be reviewed by any ... tribunal ... *except as herein provided.*" 42 U.S.C § 405(h) (emphasis added).

4. "No action against the United States ... shall be brought ... to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

er's] rather than the [government's] claim."). Given the issue before the court—its jurisdiction over the *provider's* "defenses" never presented in administrative proceedings—it had no reason to consider the effect of § 405(h) on its own jurisdiction over the *government's* claims. Thus, *Idaho Falls* provides no support for *Massachusetts Memorial*'s reading of § 405(h), or for its assertion that *Idaho Falls* concluded that § 405(h) "applied to an action brought by the United States against a Medicare provider." *Massachusetts Memorial*, 296 F.Supp.2d at 25.

*Massachusetts Memorial* similarly fails to articulate a persuasive basis for distinguishing the Eleventh Circuit's interpretation of § 405(h). First, *Massachusetts Memorial* distinguished *Body* on the ground that it concerned an action under the False Claims Act (FCA) rather than under the common law. *Id.* at 26. Though the FCA establishes a statutory (as opposed to a common law) basis for obtaining reimbursement for overpayments made by the government to private businesses, *Massachusetts Memorial* offers no persuasive explanation as to how the different bases for recovery bear in any way on the proper interpretation of § 405. Instead, *Massachusetts Memorial* asserts in conclusory fashion that § 405(h) applies to bar only unexhausted common law actions by the government, not similarly unexhausted actions under the False Claims Acts, because "[a]ctions brought under the False Claims Act do not fall within the special competence of [the Secretary]." *Id.* at 23. Why is this so? According to the *Massachusetts Memorial* court, FCA cases involve fraud or falsity, and therefore fall within the conventional experience of judges, where common law claims involve "misinterpretation of Medicare regulations," and therefore require the "Secretary's particular experience and expertise" because they fall outside the

"conventional experience of judges." *Id.* at 23. For that reason, *Massachusetts Memorial* concluded that, in the case of common law actions, courts should "defer to the Secretary's interpretations and applications of Medicare reimbursement regulations," and require the government to exhaust administrative remedies by obtaining a final administrative determination of overpayment. *Id.* at 28.

The *Massachusetts Memorial* court's "distinction" ignores the obligation of the Court, both in FCA and common law claims to recover overcharges, to commence its analysis with an assessment of applicable Medicare rules and regulations to determine whether the provider submitted an erroneous claim. As the *Body* court noted, "Medicare rules and regulations clearly would be determinative of whether false [or inaccurate] claims were, in fact, submitted." *Body*, 156 F.3d at 1105. Thus, whether recovery was sought under the FCA or common law remedies, the fact finder must interpret Medicare reimbursement regulations to determine the propriety of the provider's claim. Moreover, *Massachusetts Memorial* provides no support for the implication that a District Court would be deprived of the Secretary's expertise as the "Secretary's interpretations and applications of Medicare reimbursement regulations" may be adduced as relevant evidence in either an FCA or a common law reimbursement case.

Second, the *Massachusetts Memorial* court questioned *Body*'s reading of relevant Supreme Court precedent because it did not include *Shalala v. Illinois Council on Long Term Care*, which was decided after *Body. Id.* at 26. In *Illinois Council*, the Supreme Court held that § 405(h) establishes limits only on cases that "arise under" the Medicare Act. 529 U.S. at 12, 120 S.Ct. 1084. *Massachusetts Memorial*

suggests that *Illinois Council* holds that § 405(h) is inapplicable *only* where a provider's constitutional claims would otherwise be denied judicial review. But that ignores the context in which the Supreme Court wrote. That case addressed only the statutory limits placed on the ability of providers to challenge agency determinations in federal court before obtaining an administrative determination on the provider's claim for reimbursement. Thus, nothing in *Illinois Council* contradicts the *Body* court's conclusion that "subsection 405(h), viewed within the context in which it was drafted and made applicable to Medicare, simply seeks to preserve the integrity of the administrative process Congress designed to deal with challenges ... by dissatisfied [providers and beneficiaries]," and is therefore inapplicable to claims brought on behalf of the government to recover overpayments. *Body v. Blue Cross*, 156 F.3d at 1109, 1110; *cf. Daniel Freeman Mem'l Hosp.*, 656 F.2d at 475–76 (administrative exhaustion required for provider's claims); *Pacific Coast Med. Enters.* 633 F.2d at 137–38 (Medicare's review procedures are the "exclusive vehicle for appealing the merits of the Secretary's denial of Medicare reimbursement claims.").

In sum, *Massachusetts Memorial* does not provide convincing authority to support Defendants' argument that § 405(h) applies to bar jurisdiction over the government's claims.[5]

#### c. Social Security Disability Law Does Not Require Preclusion

■ In their reply brief, Defendants contend that the principles of administrative res judicata articulated in Social Security disability case law eliminate "any doubt" that § 405(h) precludes jurisdiction over the government's action. (Reply at 18–22). The Ninth Circuit and other courts have held that factual findings affecting the determination of disability benefits, which have become final under Social Security regulations, are binding on both the Secretary and the claimant where there is no "independent basis," "new facts," or "changed circumstances" to sustain a contrary finding. *See, e.g., Lively v. Sec'y of Health and Human Servs.*, 820 F.2d 1391, 1392 (4th Cir.1987); *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir.1985); *Drummond v. Comm'r of Social Security*, 126 F.3d 837, 842 (6th Cir.1997). Defendants argue that the initial reimbursement determinations at issue here, which are alleged to have been based on inaccurate claims, have become final under Medicare regulations, and are binding on the Secretary under the principles of Social Security disability law. Defendants further contend that there is no reason to distinguish the Social Security cases, which involve the finality of benefits determinations for disabled persons, from the instant case, which implicates the finality of reimbursement determinations to Medicare providers who are alleged to have submitted inflated claims to the government in order to receive monies to which they were not entitled. In support, Defendants offer no case law interpreting the Medicare Act, but note that the Medicare system and Social Security share the language of § 405(h) and, according to Defendants, a "similar" administrative review structure. (Reply at 21, n. 13).

---

**5.** To the extent Defendants also offer case law that articulates the well-settled rule that providers or beneficiaries must exhaust their administrative remedies, such authority is not pertinent as it does not address whether, or under what circumstances, § 405(h) applies to actions by the government. (*See, e.g.,* Mot. at 9; Reply at 11 (citing *Ill. Council*, 529 U.S. at 5, 120 S.Ct. 1084; *Drennan v. Harris*, 606 F.2d 846, 847 (9th Cir.1979); *Salfi*, 422 U.S. at 753, 95 S.Ct. 2457)).

The Social Security disability cases are distinguishable for several reasons. First, none of the Social Security cases presented by Defendants involve analogous benefits determinations that were based on allegedly inaccurate or misleading information provided by the claimants. Defendants offer no authority to support the proposition that a benefits determination based on an "inflated claim" by a Social Security claimant is res judicata against contrary findings in a subsequent proceeding simply because it became "final" under agency regulations.

Second, in creating the law of administrative res judicata in this area, courts have weighed the policy concerns and interests peculiar to the sensitive nature of administrative proceedings where the government determines a disabled claimant's entitlement to Social Security benefits. *See, e.g., Stuckey v. Weinberger*, 488 F.2d 904, 910 (9th Cir.1973) (discussing policies underlying application of res judicata in disability benefits cases). Defendants have not persuaded the Court that law shaped by consideration of these types of facts, policies and interests translates to cases where the government has allowed a Medicare provider's reimbursement claim only to discover that the determination was based on allegedly inaccurate and misleading claims. *See, e.g., Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir. 1982) ("We recognize the importance of administrative res judicata [in disability determinations]; however, enforcement of that policy must be tempered by fairness and equity .... Res judicata of administrative decisions does not acquire the rigid finality of judicial proceedings .... Fairness in the administrative process is more important than finality of administrative judgments. Because these two policies conflict here, res judicata is inappropriate."); *cf. Lively*, 820 F.2d at 1393 ("Courts have readily applied res judicata

to prevent the Secretary from reaching an inconsistent result in a second proceeding based on evidence that has already ... [resulted] in a decision favorable to the [claimant] ...." "[To overcome res judicata], [p]rinciples of finality and *fundamental fairness* drawn from § 405(h) ... indicate that the Secretary must shoulder the burden of demonstrating ... an independent basis to sustain a finding [that reduces benefits] contrary to the final earlier finding.") (emphasis added); *Drummond*, 126 F.3d at 842 (court considers "principles of fairness and finality" in determining res judicata effect of prior finding).

Finally, even were the Court in this case to apply the principles of administrative res judicata to the government's claim, it is not convinced that, under that authority, a preclusive effect would apply to the reimbursement decisions at issue. The cases offered by Defendants suggest that fairness dictates that the Secretary or the claimant may overcome the preclusive effect of a prior determination by adducing an "independent basis," "new facts," or "changed circumstances" to sustain a contrary finding. *See, e.g., Lively*, 820 F.2d at 1392; *Taylor*, 765 F.2d at 876; *Drummond*, 126 F.3d at 842; *see also Thompson*, 665 F.2d at 940 ("Administrative res judicata may apply even though the claimant has never had a hearing, where the claimant has failed to pursue his administrative appeals and *no new facts* are presented in the subsequent application.") (emphasis added). Here, res judicata may not apply to the administrative reimbursement determinations where the Secretary has uncovered evidence that the determinations were allegedly based on inaccurate and misleading claims submitted by Defendants.

### d. The Court has Jurisdiction to Hear this Action

In light of the holdings and reasoning in *Rogers, Lahey*, and *Body*, the Court has

jurisdiction to hear this case. The Court is unpersuaded that *Massachusetts Memorial* and the Social Security disability cases compel a finding that § 405(h) of the Medicare Act is intended to bar federal courts from hearing the government's actions under the FCA or related common law actions to recoup Medicare overpayments, even where the initial reimbursement determinations have become final under Medicare regulations, and no subsequent determinations of overpayment have been made.

Although Medicare regulations will determine whether the AMI hospitals received reimbursements to which they were not entitled, the government's complaint is premised on Defendants' submission of allegedly inflated, inaccurate claims. Thus, the common law, not the Medicare Act, provides both standing and the substantive basis for the claim, and § 405(h) does not apply. *See Rogers,* 2001 WL 818160 at 25, 2001 U.S. Dist. LEXIS 24914 at *78; *Body v. Blue Cross,* 156 F.3d at 1105–06; *see also United States ex rel. Rahman v. Oncology Assocs., P.C.,* 198 F.3d 502, 513 (4th Cir.1999) ("The statutes and regulations governing the Medicare [Program] ... do not preclude the United States from bringing an independent action in federal court to litigate claims under statutes such as the False Claims Act ... *or related com-*

*mon-law claims ...*") (emphasis added).[6] Accordingly, the Court DENIES Defendants' motion to dismiss on the basis that § 405(h) expressly precludes this Court's jurisdiction over the government's common law claims.

### 2. *City of Milwaukee and Oswego Barge Do Not Require Preemption*

 Relying on *City of Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1980) and *In re Complaint of Oswego Barge Corp.,* 664 F.2d 327, 335 (2d Cir.1981), Defendants argue that the comprehensive nature of Medicare's statutory and regulatory scheme preempts any "outside-the-system" common law recoupment actions by the Government. Separation of powers concerns create a presumption in favor of preemption of federal common law whenever it can be said that Congress has legislated on a subject. *Oswego Barge,* 664 F.2d at 335. In *City of Milwaukee,* the federal common law of nuisance was preempted because it conflicted with the Federal Water Pollution Control Act ("FWPCA"). *City of Milwaukee,* 451 U.S. at 311, 326, 101 S.Ct. 1784. In *Oswego Barge,* judge-made remedies were preempted because they conflicted with the FWCPA remedies. *See Oswego Barge,* 664 F.2d at 334, 343–44. Here,

---

6. In *U.S. v. California Care Corp.,* 709 F.2d 1241 (1983), the Ninth Circuit also held that § 405(h) did not preclude the district court from hearing a suit brought by the government under 28 U.S.C. § 1345 to recoup Medicare overpayments. *Id.* at 1245; *see also Klein v. Heckler,* 761 F.2d 1304, 1309 (9th Cir.1985) ("In a normal recoupment, the Secretary would bring suit in federal court to recover the money allegedly overpaid. We have recognized jurisdiction over such cases.") (citing *California Care*). Defendants argue that *California Care* and the *Klein* dicta are not apposite because they rely on *United States v. Aquavella,* 615 F.2d 12, 14 (2d Cir. 1979), and, like *Aquavella,* turn on due process issues unique to pre–1973 reimbursement claims—before the Medicare Act was amended to add the provider appeal procedures in 42 U.S.C. § 1395oo. The Court agrees that, although *California Care* provides some support for the majority view in holding that § 405(h) does not preclude jurisdiction over § 1345 actions, *California Care* is not dispositive as the decision turns on whether § 405(h) bars the court from hearing the *provider's defenses* where no forum was otherwise available to the providers. *Id.* at 1245 ("We hold that 28 U.S.C. § 1345 provides jurisdiction to decide the issues raised *by the providers* in this case.") (emphasis added).

however, there is no body of federal common law regarding Medicare reimbursements to conflict with the Medicare Act, and preemption is not indicated.

In *City of Milwaukee*, the state of Illinois brought suit in federal court against the City of Milwaukee asserting that the City's discharge of sewage into Lake Michigan constituted a public nuisance. 451 U.S. at 310, 101 S.Ct. 1784. The district court found that Illinois had "proved the existence of a nuisance under federal common law." *Id.* at 311, 101 S.Ct. 1784. The Court ordered the City to reduce its discharge, even though the City was operating within the limits established by a permit under the FWPCA. *Id.* at 311, 101 S.Ct. 1784. The Supreme Court reversed and held that the comprehensive nature of the FWPCA precluded suit under common law principles, as such suits could create conflicting obligations for permit holders who might be required to meet more stringent requirements than required by federal law. *Id.* at 320, 101 S.Ct. 1784. To permit federal courts "to write their own ticket" under the guise of federal common law after permits were issued would be inconsistent with the regulatory scheme. *Id.* at 326, 101 S.Ct. 1784.

In *Oswego Barge*, the court concluded that the comprehensive nature of the FWPCA precluded remedies based on maritime and common law that might have permitted the government to recover against a polluting vessel for clean up costs not allowed by the controlling legislative scheme. 664 F.2d at 344. The FWCPA mandated a strict liability remedy against the polluting vessel subject to a dollar limitation. *Id.* at 343. The Second Circuit held that unless judge-made remedies under the common law or maritime law were preempted by the FWCPA, polluting vessels would potentially be subject to a "four-tiered" scheme of liabilities with varying dollar limitations and standards of liability ranging from negligence to strict liability. *Id.* at 343–44. Allowing judge-made remedies at odds with the statutory scheme "would amount to rewriting rules that Congress has affirmatively and specifically enacted." *Id.* at 343 (internal quotation marks omitted).

Here, in contrast, preemption is not indicated because allowing the government to bring its common law action would not contravene any congressional policy, allowing this Court to "rewrite rules" or "write its own ticket." First, nothing in the Medicare Act suggests that Congress wanted to limit the ability of the federal government to recoup overpayments. *Body v. Blue Cross*, 156 F.3d at 1104 n. 12, 1106. Thus, the pursuit of claims by the federal government serves the legislative purpose. Second, unlike the common law actions pursued by the government in *City of Milwaukee* and *Oswego Barge*, the government's pursuit of recoupment claims via common law remedies does not create the risk of conflicting obligations or remedies because the government's right to recover will be determined by "Medicare rules and regulations." *See id.* at 1105. As noted above, no body of federal common law regarding Medicare reimbursements exists which might conflict with the regulatory scheme. Recovery can only be obtained if Defendants' claims exceed the amount permitted under controlling federal regulations. Accordingly, preemption is not indicated and the Court DENIES Defendants' motion to dismiss on the basis that the government's common law claims are preempted by the comprehensive nature of the Medicare Act.

## D. *The Government is Not Required to Exhaust Administrative Remedies*

Defendants argue, in the alternative, that the Court lacks jurisdiction because

the government has failed to exhaust administrative remedies as required by § 405(h). Specifically, Defendants argue that the government is required to obtain an administrative determination of overpayment before pursuing a remedy in federal court. In support, Defendants offer inapplicable authority holding that § 405(h) requires providers or beneficiaries to exhaust administrative remedies before seeking judicial review of an adverse determination. *See Idaho Falls,* 81 F.Supp.2d at 1049; *Salfi,* 422 U.S. at 757, 95 S.Ct. 2457.

Only *Massachusetts Memorial* holds that the exhaustion required by § 405(h) applies to actions brought by or on behalf of the government. For the reasons discussed above, the Court is not persuaded by the *Massachusetts Memorial* court's interpretation of the second sentence of § 405(h), its reading of precedent, its distinguishing of *Body,* or its distinction between actions under the FCA and related common law actions. Thus, *Massachusetts Memorial* offers no persuasive authority or reasoning to support a holding that § 405(h) applies to actions brought by the government, whether under the FCA or related common law actions.

Exhaustion requirements, such as the one codified by § 405(h), serve to allow an agency "greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Ill. Council,* 529 U.S. at 13, 120 S.Ct. 1084. Where, as here, the government itself "decides to pursue a judicial remedy, the exhaustion of remedies doctrine is simply not applicable." *United States v. Paternostro,* 966 F.2d 907, 912 (5th Cir.1992); *see also Lahey,* 2004 WL 950448 at *2, 2004 U.S. Dist. LEXIS 7572 at *6–*7 ("[T]he policy reasons for requiring administrative exhaustion do not apply when the govern-

ment is the plaintiff."); *cf. Body,* 156 F.3d at 1107–08 (explaining that justifications for requiring exhaustion are inapplicable to actions under False Claims Act). Accordingly, the Court **DENIES** Defendants' motion to dismiss on the basis that government failed to exhaust administrative remedies.

## IV

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**.

IT IS SO ORDERED.